# STATE OF LOUISIANA v. McADOO, SECRETARY OF THE TREASURY.

## MOTION FOR LEAVE TO FILE PETITION.

Original. Argued April 14, 1914.—Decided June 22, 1914.

The United States may not be sued in the courts of this country without its consent.

Whether the United States is in legal effect a party is not always determined by whether it appears as a party on the record but by the effect of the decree that can be rendered.

A State which happens to operate sugar plantations by its convict labor may not review the action of the Secretary of the Treasury in determining the rate of duty to be collected on foreign sugar any more than any other producer of sugar may do so.

A suit against the Secretary of the Treasury to review his action in determining the rate of duty to be collected, under statutes and treaties, on an imported article, and to mandamus him to collect a specific amount, is in effect a suit against the United States.

Even an importer may not invoke the aid of the courts to clog the wheels of government by attempting to review by mandamus the action of the Secretary of the Treasury in determining the rate of duty to be collected on imported articles.

Determining the rate of duty to be collected under the existing statutes and treaties on foreign sugar is not a mere ministerial act on the part of the Secretary of the Treasury, but one involving judgment and discretion.

While a public officer may by law, and at the instance of one having a particular legal interest, be required to perform a mere ministerial act not requiring the exercise of judgment or discretion, he may not be so required in respect to matters committed to him by law and requiring the exercise of judgment and discretion.

The courts will not interfere with the ordinary functions of the executive department of the Government.

Application for leave to file a petition for writ of mandamus against the Secretary of the Treasury to compel him to collect a different amount of duty on sugar imported from Cuba under the provisions

of the existing statute and the treaty of 1902 with Cuba, denied, without expressing any opinion on the merits of the questions involved.

THE facts, which involve the jurisdiction of this court to entertain an original suit against the Secretary of the Treasury of the United States, and the determination of whether the suit is one against the United States, are stated in the opinion.

Mr. Ruffin G. Pleasant, Attorney General of the State of Louisiana, and Mr. Joseph W. Bailey, with whom Mr. Paul J. Christian was on the brief, for petitioner.

The Solicitor General, with whom Mr. Assistant Attorney General Adkins was on the brief, for the United States.

MR. JUSTICE LURTON delivered the opinion of the court.

The State of Louisiana has appeared at the bar of this court, through its Attorney General, for the purpose of obtaining permission to file this petition against the Honorable William Gibbs McAdoo, Secretary of the Treasury of the United States, and the Honorable C. S. Hamlin, Assistant Secretary of the Treasury of the United States. The United States, by its Solicitor General, has appeared in opposition, contending that the suit is one against the United States and cannot, therefore, be brought without its consent.

No principle is better established than that the United States may not be sued in the courts of this country without its consent. If, therefore, this be a suit against the United States, the State, though entitled as a State to appeal to the original jurisdiction of this court, must show some authority from Congress under which such a suit may be brought, or leave to file must be denied. *United*

*States* v. *Clarke*, 8 Peters, 436; *United States* v. *Lee*, 106 U. S. 196; *Kansas* v. *United States*, 204 U. S. 331, 333.

That the United States is not named on the record as a party is true. But the question whether it is in legal effect a party to the controversy is not always determined by the fact that it is not named as a party on the record, but by the effect of the judgment or decree which can here be rendered. *Minnesota* v. *Hitchcock*, 185 U. S. 373, 387; *Kansas* v. *United States*, *supra.*

The facts, briefly stated, upon which relief is asked are these:

The State, as a part of its economic policy, operates with its convicts three sugar plantations and three sugar mills. It is therefore a producer of sugar, which must find a market in competition with that imported from the Republic of Cuba and other sugar exporting countries.

The petition avers that under the instructions of the defendant Treasury officials Cuban sugar, since March 1, 1914, the date upon which the Underwood Tariff Act became effective, is admitted into the United States at a rate of 1 1–100 cents per pound, being 80% of 75% of the rate of duty on sugar imposed by the Dingley Tariff Act of July 24, 1897, c. 11, 30 Stat. 151, which was 1 685–1000 cents per pound. The contention made is that the rate which should be collected on Cuban sugar is the rate imposed by the Dingley tariff bill, less a reduction of 20%, making the net rate legally collectible 1 348–1000 cents per pound, as provided in the commercial treaty between the United States and the Republic of Cuba of December 1, 1902, as made effective by the act of Congress of December 17, 1903, c. 1, 33 Stat. 3, "*or, in the alternative, the duty on all such sugar imported into the United States should be 75% of the Dingley bill rate, or 1 26–100 cents per pound, as provided . . . in the Underwood bill of October 3, 1913, without any preferential rate whatever being allowed in favor of said Cuban sugar.*"

Article II of the convention referred to provides that the products of the soil or industry of Cuba not included in Article I "shall be admitted at a reduction of 20% of the rate of duty as provided by the tariff act of the United States approved July 24, 1897, *or as may be provided by any tariff law of the United States subsequently approved.*" A proviso to Article VIII is in these words:

"That while this convention is in force, no sugar imported from the Republic of Cuba, and being the product ·of the soil or industry of the Republic of Cuba, shall be admitted into the United States at a reduction of duty greater than twenty per centum of the rates of duty thereon as provided by the tariff act of the United States approved July 24, 1897, and no sugar, the product of any other foreign country, shall be admitted by treaty or convention into the United States, while this convention is in force, at a lower rate of duty than that provided by the tariff act of the United States approved July 24, 1897."

The reduction in all sugar duties made by the Tariff Act of 1913, effective March 1, 1914, is 25% upon the former rate of the Dingley bill, and the same act after May 1, 1916, provides for the free admission of all sugar.

The contention seems to be that the proviso, that no sugar "shall be admitted into the United States at a reduction of duty greater than 20%" of the rate of duty provided by the Dingley Act, operates to prevent any reduction in favor of Cuban sugar after March 1, 1914, since the reduction made in duty on all imported sugar, including Cuban sugar, is 25% of the Dingley rate, and that as such reduction is more than the preferential under the Cuban convention, the preferential duty under that convention ceases. Upon the other hand, the contention is that the Underwood Act manifested a plain purpose to continue a preferential of 20% upon the reduced duties provided therein, a purpose manifested by the abrogation

of the proviso of Article VIII which might have interfered with such intent.

It is not the purpose of the court to intimate any opinion upon the merits of the contentions thus presented, and we have only stated the opposing views far enough to enable us to decide whether the suit is or is not one against the United States.

The petition proceeds by averring that the action of the defendant Treasury officials in instructing customs officers to admit Cuban sugar after March 1, 1914, at a reduction of 20% of the rate effective on that date, was "arbitrary, illegal and unjust . . . . and will work great and irreparable injury to your petitioner unless they are restrained and inhibited from demanding and collecting the said illegal charges on Cuban sugar imported into the United States; and another, and higher duty, as shown above, be exacted and collected by said officials on said sugar instead." It is then contended that this direction to continue the allowance of a reduction of 20% upon the reduced rates fixed by the Underwood Act is such a flagrant exercise of arbitrary power as to make it the duty of a court of equity, upon application of anyone having a definite and distinct interest, to prohibit the allowance of the reduction and require the collection of the full duty imposed by the Underwood Act, or, if any preferential be allowed, it be only upon the higher duty exacted by the act of 1897.

But what definite and distinct interest has the State of Louisiana whether the rate collected be too high or too low? She is a producer of sugar which must be sold in competition with foreign sugar, and the petition avers that the lowering of the duty upon Cuban sugar will lower the price for which she must sell her sugar yet unsold. But if Louisiana, as a mere producer and seller of sugar may review the action of the Secretary of the Treasury in determining the rate to be collected on Cuban sugar, why

may not any consumer, though not an importer, make a similar complaint if in his judgment the Secretary of the Treasury is exacting a higher rate than justified by the law, thereby enhancing the price he must pay in the market upon imported articles which he uses? Obviously such suits to review the official action of the Secretary of the Treasury in the exercise of his judgment as to the rate which should be exacted under his construction of the Tariff Acts would operate to disturb the whole revenue system of the Government and affect the revenues which arise therefrom. Such suits would obviously, in effect, be suits against the United States. *New York Guaranty Co.* v. *Steele,* 134 U. S. 230; *Louisiana* v. *Jumel,* 107 U. S. 711; *Hopkins* v. *Clemson College,* 221 U. S. 636, 642.

There have always been remedies by which an importer may recover an excess rate of duty exacted from him by a customs collector, either by common law action against the collector, as in *Elliott* v. *Swartwout,* 10 Peters, 137, or by statute, § 2931, Revised Statutes; act of June 10, 1890, c. 407, 26 Stat. 131, 137; act of August 5, 1909, c. 6, 36 Stat. 11. But the claim that even an importer may complain by appeal or otherwise of the exaction of too low a rate of duty seems not to have been asserted until 1912, when an appeal by an importer against an assessment as too low was sustained by the Customs Court of Appeals, 3 Customs Appeal, 24, upon the theory that one might be aggrieved by an assessment too low as well as by one too high. But this decision did not meet with favor and the remedy by appeal was confined to cases in which the duty imposed was claimed to be higher than authorized by existing law. Act of October 3, 1913, c. 16, 38 Stat., § III, part N.

But we can discover no precedent where even an importer has sought to clog the wheels of government by reviewing the action of the Secretary of the Treasury by a bill such as this.

The duties imposed upon the Secretary of the Treasury in the collection of sugar tariffs are not ministerial. They are executive and involve the exercise of judgment and discretion. The facts show a situation in which the Secretary of the Treasury was confronted with the necessity of construing the law and then instructing the customs officers as to whether the twenty per cent.' preferential duty on Cuban sugar required by the convention and the act of 1903 confirming that treaty had been superseded or in any wise affected by the later provisions of the Underwood Act.

By statute originally enacted in 1792 (May 8, 1792, c. 37, 1 Stat. 280), now § 249, Revised Statutes, it is expressly provided that the Secretary of the Treasury is to "superintend the collection of customs duties as he shall think best." His interpretation of any custom law is made conclusive and binding upon all officers of customs, and upon his successors, until reversed by judicial decision. Revised Statutes, § 2652; act of March 3, 1875, c. 136, 18 Stat. 469, § 2. In the discharge of his duties, semi-judicial in character, the Secretary of the Treasury is, by statute, entitled to the opinion of the Attorney General, which, as we may judicially know, was obtained in this matter. 30 Ops. Att. Gen., February 14, 1914.

There is a class of cases which hold that if a public officer be required by law to do a particular thing, not involving the exercise of either judgment or discretion, he may be required to do that thing upon application of one having a distinct legal interest in the doing of the act. Such an act would be ministerial only. But if the matter in respect to which the action of the official is sought, is one in which the exercise of either judgment or discretion is required, the courts will refuse to substitute their judgment or discretion for that of the official entrusted by law with its execution. Interference in such a case would be to interfere with the ordinary functions of government.

*Marbury* v. *Madison,* 1 Cranch, 137; *Kendall* v. *United States,* 12 Peters, 524, 610; *United States* v. *Schurz,* 102 U. S. 378, are examples of instances where the duty was supposed to be ministerial. Cases upon the other side of the line are, *Decatur* v. *Paulding,* 14 Peters, 497, 514, *et seq; Mississippi* v. *Johnson,* 4 Wall. 475; *Cunningham* v. *Macon &c. Railroad,* 109 U. S. 446; *United States, ex rel. Dunlap* v. *Black,* 128 U. S. 40; *United States ex rel.* v. *Lamont,* 155 U. S. 303; *Roberts* v. *United States,* 176 U. S. 221; *Riverside Oil Company* v. *Hitchcock,* 190 U. S. 316; *Ness* v. *Fisher,* 223 U. S. 683.

*This application for leave to file must be denied.*

THE CHIEF JUSTICE took no part in the decision of this case.

MR. JUSTICE McKENNA concurs upon the ground last stated.