**TAX ANALYSTS AND ADVOCATES**
et al., Plaintiffs,

v.

George P. SHULTZ et al., Defendants.

Civ. A. No. 594-73.

United States District Court,
District of Columbia.

June 7, 1974.

890

Ira L. Tannenbaum, Thomas F. Field, Samuel H. Black, Washington, D. C., for plaintiffs.

John J. McCarthy, Donald J. Gavin, Tax Div. U. S. Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

This case is presently before the Court on cross-motions for summary judgment and defendants' renewed motion to dismiss.

The facts of the case are briefly as follows:

On June 21, 1972, the Internal Revenue Service issued Rev. Rul. 72–355, 1972–2 Cum. Bull. 532 [1] in response to inquiries on gift tax treatment of contributions to political campaigns. In essence, the ruling stated that gifts of up to $3,000 to multiple finance committees organized to receive contributions for the campaign of the same political can-

[1]. Released in "Internal Revenue Bulletin" No. 1972–29, July 17, 1972, pages 4–6.

didate are to be treated as gifts to the committees and not to the candidate. These gifts thus qualify for the $3,000 exclusion under the gift tax provision of the Internal Revenue Code (§ 2503(b))[2], if, *inter alia*, at least one-third of the officers of each committee are different.[3]

As a result of this Revenue Ruling, millions of dollars were contributed to the campaigns of the 1972 presidential candidates in $3,000 increments to a multitude of finance committees who simply funnelled the money to the central finance committees.[4] Individual donors who contributed hundreds of thousands of dollars thereby escaped the gift tax which would have been imposed were the contributions made directly to the central campaign committees.

The plaintiffs filed this action for declaratory and injunctive relief attacking Rev. Rul. 72–355 as an illegal act of the IRS. Plaintiffs rely primarily on the case of Helvering v. Hutchings, 312 U.S. 393, 61 S.Ct. 653, 85 L.Ed. 909 (1941) as the proper interpretation of the application of the gift tax.

The defendants filed a motion to dismiss on June 22, 1973, which this Court denied by a written order without an opinion on September 17, 1973. Defendants have renewed that motion along with their motion for summary judgment. In light of two recent Supreme Court cases, *infra*[5], the Court feels that a detailed opinion on this issue is necessary.

The defendants make the following arguments as grounds for their motion to dismiss: (1) § 7421(a) of the Internal Revenue Code[6] bars suits to restrain or enjoin the collection of taxes, (2) the Declaratory Judgment Act, 28 U.S.C. § 2201,[7] prohibits declaratory judgments in tax matters, (3) there has been no waiver of sovereign immunity, and (4) the plaintiffs lack standing.

## I.

Defendants first argue that since § 7421(a) bars any suit to restrain the assessment or collection of taxes even if the plaintiff is not the "person against whom the tax was assessed", no

---

2. 26 U.S.C. § 2503(b) *Exclusions from gifts* —In the case of gifts (other than gifts of future interests in property) made to any person by the donor during the calendar year 1955 and subsequent calendar years, the first $3,000 of such gifts to such person shall not, for purposes of subsection (a), be included in the total amount of gifts made during such year. Where there has been a transfer to any person of a present interest in property, the possibility that such interest may be diminished by the exercise of a power shall be disregarded in applying this subsection, if no part of such interest will at any time pass to any other person.

3. The rules governing these committees are set out in Rev. Rul. 72–355 and Rev. Rul. 74–199.

4. Plaintiffs have submitted a number of affidavits which support this view of the major presidential campaigns of 1972. Defendants have objected to these affidavits as being hearsay and irrelevant to this case. The Court finds that affidavits are unnecessary. On their face, these committees acted only to collect money and forward it to the central finance committees. That is all that is necessary for the Court in this case.

5. Alexander v. Americans United, Inc., —— U.S. ——, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974) ; Bob Jones University v. Simon, —— U.S. ——, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974).

6. 26 U.S.C. § 7421(a) reads: *Tax*—Except as provided in sections 6212(a) and (c), 6213(a), and 7426(a) and (b)(1), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

7. 28 U.S.C. § 2201 reads: *Creation of remedy*—In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

court is authorized to give any relief to these plaintiffs.

In Enochs v. Williams Packing and Navigation Co., Inc., 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962),[8] Chief Justice Warren stated that:

> The manifest purpose of § 7421(a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund. In this manner the United States is assured of prompt collection of its lawful revenue.

The language of the statute and its interpretation by the Supreme Court clearly indicates that this provision precludes suits to restrain the assessment or collection of taxes. It has no application to the instant situation in which plaintiffs seek not to restrain the Commissioner from collecting taxes, but rather to *require* him to collect *additional* taxes according to the mandates of the law. A refund suit or an action in the Tax Court is clearly inapplicable. No taxpayer is seeking any refund in this case; rather, plaintiffs allege, a tax which is due was *not* collected.

■ The Court reads § 7421(a) as an effort to prevent the hindrance of the collection of taxes in dispute in matters which can be resolved in refund suits. Since plaintiffs are not seeking to restrain the collection of taxes, and since they cannot obtain relief through a refund suit, § 7421(a) does not bar the injunctive relief they seek.

Two recent decisions by the Supreme Court, *Americans United, supra,* and *Bob Jones University, supra,* have shed further light on the scope of § 7421(a) and the exception to the Declaratory Judgment Act. Because of their potentially dispositive force, both cases require a complete analysis.

The Supreme Court's decision in *Americans United* contains a full discussion of the factual background of the case, but the following synopsis is sufficient for our purposes. "Americans United" (AU) is a nonprofit, educational corporation organized under the laws of the District of Columbia, whose purpose is to defend religious liberty in the United States by fostering the constitutional principle of separation of Church and State. In 1950, the IRS granted it tax-exempt status under what is now § 501(c)(3) of the Internal Revenue Code. Thereafter, contributions to "Americans United" were treated as charitable deductions.

The IRS revoked this status on April 25, 1969 . . .

> when the Service issued a ruling letter revoking the 1950 ruling on the ground that respondent had violated §§ 501(c)(3) and 170(c)(2)(D) by devoting a substantial part of its activities to attempts to influence legislation. Shortly thereafter, the Service issued another ruling letter exempting respondent from income taxation as a "social welfare" organization under Code § 501(c)(4), 26 U.S.C. § 501(c)(4). The effect of this change in status was to render respondent liable for unemployment (F.U.T.A.) taxes under Code § 3301, 26 U.S.C. § 3301, and to destroy its eligibility for tax-deductible contributions under § 170.[9]

Because of the substantial drop in contributions which followed, AU brought an action in this District Court seeking declaratory and injunctive relief alleging an erroneous and unconstitutional withdrawal of its tax-exempt status.

The Supreme Court held that the Anti-Injunction Act is applicable because it was AU's intent in initiating this lawsuit to restrain the collection of taxes assessed against its contributors and to restrain the collection of its own F.U.T.A. taxes. The Court disagreed with the Court of Appeals' conclusion

8. Recently cited with approval by the Supreme Court in *Americans United, supra,* n. 5.

9. *Americans United, supra,* n. 5 at 4712 [94 S.Ct. at 2056].

that the restraint of tax collection was "at best a collateral effect."[10]

In *Bob Jones University, supra,* the Court came to the same conclusion—petitioner's objective was to restrain the collection of taxes it owed. The Court noted that, "[p]etitioner's complaint and supporting documents filed in the District Court belie any notion that this is not a suit to enjoin the assessment or collection of federal taxes from petitioner."[11]

■ This Court is of the opinion that the decision in AU dictates a dismissal of this action as to plaintiffs NCEC and Levy but is distinguishable as to plaintiff Tax Analysts and Advocates.

Plaintiff National Committee for an Effective Congress (NCEC) is an unincorporated committee organized in 1948 in New York City for the stated purpose of influencing the election of candidates on a non-partisan basis to the United States Senate and House of Representatives. NCEC's principal activity is to receive political contributions which it, in turn, distributes to a limited number of Congressional campaigns which it deems worthy of support. In 1972, NCEC contributed to approximately 90 such campaigns.

Under Rev. Rul. 72–355, NCEC is treated for purposes of the $3,000 gift tax exclusion as a "person". Therefore, a donor of over $3,000 to NCEC in a taxable year will be subject to federal gift tax even though no candidate received as much as $3,000 as a result of his contribution. As a result, Rev. Rul. 72–355 has severely discouraged, and continues to discourage, contributions to NCEC in excess of $3,000, even where no single campaign derives more than $3,000 from such individual contributions. NCEC contends that since its tax treatment differs from that accorded to the campaign committees of the major

political parties, contributors and potential contributors have been discouraged from supporting NCEC.

In also representing its member-contributors (represented by plaintiff Levy), NCEC seeks to avoid the assessment and collection of a gift tax on contributions over $3,000. These are the same arguments advanced in *Americans United.* The Court concluded that a case so premised was proscribed by § 7421(a) because it seeks to restrain the enforcement or collection of federal taxes. This Court agrees and accordingly dismisses NCEC and Levy as party plaintiffs.

Plaintiff Tax Analysts and Advocates (TAA) is a non-profit corporation organized under the laws of the District of Columbia in 1970 for the purpose of promoting tax reform through education of the press regarding Federal tax matters and by conducting a public interest legal practice concerning tax matters. Its members are persons who have contributed at least $15 annually ($5 in the case of students) to assist TAA and thereby promote tax reform and support its operation as a public interest tax law firm.

The Court concludes that *Americans United* and *Bob Jones University* are factually distinguishable from Tax Analysts and Advocates and its named individual members as the plaintiffs. Tax Analysts and its members do not seek to restrain the enforcement of any tax whatsoever. Tax Analysts seeks to force the IRS to collect a tax which is due, but which has been allegedly avoided by an illegal Revenue Ruling. *Americans United* and *Bob Jones U.* held that whenever a plaintiff's own taxes will in any way be restrained either from assessment or collection, the action is barred.[12] This is so even though the tax effect appears only to be a collateral

10. Americans United v. Walters, 155 U.S. App.D.C. 284, 477 F.2d 1169, 1179 (1973).

11. *Bob Jones University, supra,* n. 5 at 4725 [94 S.Ct. at 2046].

12. The Supreme Court did, however, provide a caveat to this otherwise prophylactic rule. If the plaintiff can meet the test set out in Enochs v. Williams Packing and Navigation Co., Inc., *supra,* then a pre-enforcement injunction will be allowed.

aspect of the action. Thus, an action to *force the collection* of that tax is clearly outside the scope of both the language and intent of § 7421(a).

## II.

■ Defendants next argue that the exception to the Declaratory Judgment Act, 28 U.S.C. § 2201, bars the granting of declaratory relief.

The rationale for the exclusionary clause is co-extensive with § 7421(a).[13] It prevents by declaratory relief what is similarly precluded by injunctive relief —interference with the collection and assessment of taxes which are litigable by a refund suit or an action in the Tax Court.

In McGlotten v. Connally,[14] the plaintiff sued both as a black American and as a taxpayer to enjoin Treasury Department officials from granting tax benefits to fraternal organizations and social groups which exclude nonwhites from membership. The government argued that the suit was barred by § 7421(a) and the exception to the Declaratory Judgment Act. The Court concluded that neither of these provisions prohibited the suit.

The Court stated that:

> In our view, the scope of this exception is coterminous with the breadth of the Tax Injunction Act, 26 U.S.C. § 7421(a).[15]

Reading those two statutes together, the Court further stated that McGlotten did not:

> . . . seek to limit the amount of tax revenue collectible by the United States. The preferred course of rais-

ing his objections in a suit for refund is not available. In this situation we cannot read the statute (28 U.S.C. Sec. 2201) to bar the present suit. To hold otherwise would require the kind of ritualistic construction which the Supreme Court has repeatedly rejected. Even where the particular plaintiff objects to his own taxes, the Court has recognized that the literal terms of the statute do not apply when 'the central purpose of the Act is inapplicable.' In the present case, the central purpose is clearly inapplicable. It follows that neither § 7421(a) nor the exception to the Declaratory Judgment Act prohibits this suit.[16]

The cases relied on by defendants all sought to restrain the government from collecting a tax;[17] none, as in the instant case, involved plaintiffs who sought relief that would increase tax collections. The plaintiffs in defendants' cited cases were also fully able to raise their claims in a refund suit. Accordingly, defendants' citations are inapposite and the Court thus finds no statutory bar to bringing this action.

## III.

■ Defendants' third argument is twofold. First, they argue that other than Congressional oversight,[18] a refund suit[19] or a Tax Court action,[20] enforcement and interpretation of the Internal Revenue Code is entrusted to the sole discretion of the Secretary of the Treasury and the Commissioner of Internal Revenue. Second, defendants contend that when a suit nominally names as a

---

13. In *Americans United* and *Bob Jones University*, this point is discussed and the Court avoided taking any position at all on the issue. This Court therefore concludes that McGlotten v. Connally, 338 F.Supp. 448 (D. D.C.1972) is controlling on the question.

14. *McGlotten, supra.*

15. *McGlotten, supra*, at 452–453.

16. *McGlotten, supra*, at 453–454.

17. Jolles Foundation v. Moysey, 250 F.2d 166 (2nd Cir. 1957) ; Singleton v. Mathis, 284

F.2d 616 (8th Cir. 1960) ; Mitchell v. Riddell, 402 F.2d 842 (9th Cir. 1968) ; Kyron Foundation v. Dunlap, 110 F.Supp. 428 (D. D.C.1952) ; Jules Hairstylists of Maryland v. United States, 268 F.Supp. 511 (D.Md.1967).

18. 26 U.S.C. §§ 8001, 8002, 8021, 8022, Internal Revenue Code of 1954.

19. *See* 28 U.S.C. §§ 1346(a)(1), 1491.

20. 26 U.S.C. §§ 6213(a), 7422, Internal Revenue Code of 1954.

defendant an officer or agent of the United States, the action will be construed as one against the United States when the relief sought would, in fact, be obtained from the sovereign. Such officers or agents of the United States acting within the scope of their employment are immunized from civil suits by the doctrine of sovereign immunity. Unless the sovereign waives its immunity and consents to such a suit, the action must be dismissed.[21] Defendants contend that full discretion over administration of the Internal Revenue Code has been entrusted to the Secretary of the Treasury and the Commissioner of Internal Revenue and therefore there is no consent to the suit and it must be dismissed.

As to the agency discretion argument advanced by defendants, judicial review under § 10 of the Administrative Procedure Act, 5 U.S.C. § 702, is precluded in instances in which under 5 U.S.C. § 701(a)(2) "agency action is committed to agency discretion by law". However, defendants have failed to cite the required nexus with § 701(a)(2). They have cited no law which commits IRS action to IRS discretion. Section 7805 of the Code only authorizes the issuance of rulings amplifying technical statutory provisions. It says nothing with respect to judicial review or commitment to agency discretion.

Further, the Supreme Court has stated that the "committed to agency discretion" exclusion is:

. . . a very narrow exception. Berger, Administrative Arbitrariness and Judicial Review, 65 Col.L.Rev. 55 (1965). The legislative history of the Administrative Procedure Act indicates that it [the agency discretion exception] is applicable in those rare instances where "statutes are drawn in such broad terms that in a given case there is no law to apply." Citizens to Preserve Overton Park, Inc. v.

Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971).

The Internal Revenue Code is a detailed statutory scheme and there is ample judicial interpretation of both its broad meanings and narrow provisions.

The Court concludes that no statutory provision confers the absolute and unfettered discretion with which the defendants would have this Court endow the Treasury Department and the Internal Revenue Service in connection with the administration and interpretation of the Internal Revenue Code.

The Court finds that there are two solid grounds for denying defendants' claims of sovereign immunity: (1) the Administrative Procedure Act constitutes a waiver of sovereign immunity, and (2) a *prima facie* claim that acts by government officials are *ultra vires* prevents the invocation of that doctrine.

In Scanwell Laboratories, Inc. v. Shaffer, 137 U.S.App.D.C. 371, 424 F.2d 859 (1970), the Court held that the doctrine of sovereign immunity does not apply when an action is jurisdictionally based on the Administrative Procedure Act. The Court stated that

. . . it seems axiomatic to us that one must imply, from a statement by the Congress that judicial review of agency action will be granted [i. e. from Sec. 10 of the APTA 5 U.S.C. Sec. 702], an intention on the part of Congress to waive the right of sovereign immunity; any other construction would make the review provisions illusory.[22]

In this case, plaintiffs contend that they are persons adversely affected and aggrieved within the meaning of the Administrative Procedure Act, 5 U.S.C. § 702.

The Court finds equally persuasive the fact that plaintiffs allege that defendants' acts are *ultra vires*, a contention which the Courts have uniformly

21. Louisiana v. McAdoo, 234 U.S. 627, 34 S. Ct. 938, 58 L.Ed. 1506 (1914); Hawaii v. Gordon, 373 U.S. 57, 58, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963).

22. Scanwell Laboratories, Inc. v. Shaffer, 137 U.S.App.D.C. 371, 424 F.2d 859, 874 (1970).

held to be exempt from sovereign immunity defenses.

The Supreme Court first stated the rule in Larson v. Domestic & Foreign Corporation, 337 U.S. 682, 689, 69 S.Ct. 1457, 1461, 93 L.Ed. 1628 (1949)

. . . where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions. The officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden.

His actions are *ultra vires* his authority and therefore may be made the object of specific relief.

In Americans United, Inc. v. Walters, 155 U.S.App.D.C. 284, 477 F.2d 1169 (1973), (reversed on other grounds, —— U.S. ——, 94 S.Ct. 2053, 40 L.Ed. 518 (1974)), the defendants relied heavily on Louisiana v. McAdoo, 234 U.S. 627, 34 S.Ct. 938, 58 L.Ed. 1506 (1914), as they do in the instant case. However, the Court concluded at p. 1180 that:

We feel that the appellee has failed to recognize this suit as rightly falling within the exceptions to the doctrine as reiterated by the Supreme Court in Dugan v. Rank, 372 U.S. 609, 622, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963) . . . [the challenge by appellants] clearly falls within the 'exception' almost as broad as the 'rule' that 'sovereign immunity does not prevent a suit against a state or federal officer who is acting either beyond his authority or in violation of the Constitution.' [K. Davis, Administrative Law Treatise 522 (1958)].

The claim of sovereign immunity is one in which the government raises frequently and often inadvisedly. It appears to be a boilerplate element of many of the government's motions to dismiss even when clear exceptions are firmly established. As Chief Judge

Friendly noted in Toilet Goods Association v. Gardner, 360 F.2d 677, 683, n. 6 (2nd Cir. 1966) and with which this Court firmly agrees:

We need not discuss in the text the surprising contention that an action for a declaration that federal regulatory officers have acted in excess of their authority constitutes an unconsented suit against the United States. The contrary is clearly established by Philadelphia Co. v. Stimson, 223 U.S. 605, 619–620, 32 S.Ct. 340, 56 L.Ed. 570 (1912); see Stark v. Wickard, 321 U.S. 288, 290, 64 S.Ct. 559, 88 L. Ed. 733 (1944), and indeed follows inevitably from Ex parte Young, 209 U. S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); law officers of the Government ought not to take the time of busy judges or of opposing parties by advancing an argument so plainly foreclosed by Supreme Court decisions.

Defendants' claims of sovereign immunity are thus denied.

## IV.

The last element of defendants' motion to dismiss is that plaintiffs lack standing. Defendants allege that plaintiffs have failed to show that the "challenged action has caused [them] injury in fact" or that they are "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question".[23]

The issue of standing focuses on the parties themselves, rather than upon the merits of the issues they wish to have adjudicated. In Flast v. Cohen, the Supreme Court stated

. . . in terms of Article III limitations on federal court jurisdiction, the question of standing is related only to whether the dispute sought to be adjudicated will be presented in an adversary context and in a form his-

23. *Association of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 90 S. Ct. 827, 25 L.Ed.2d 184 (1970); Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed. 2d 192 (1970).

torically viewed as capable of judicial resolution.[24]

In 1970, the Supreme Court issued its two-pronged test for standing in *Data Processing, supra,* and *Barlow, supra.* The "zone of interest" test has come under considerable criticism as a vague, illogical and unnecessary prerequisite,[25] and the U. S. Court of Appeals for the District of Columbia has indicated that injury in fact alone may be sufficient for standing.[26] These cases have not ignored the zone of interest test altogether, but they have touched on it only briefly.

■' The Court concludes from its reading of Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) and United States v. SCRAP, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973) that the standing tests enunciated therein are controlling, and that "zone of interest" is now, at best, only a collateral area of inquiry.

In *SCRAP, supra,* the plaintiff, Students Challenging Regulatory Agency Procedures (SCRAP), was an. unincorporated association of five law students formed for the primary purpose of enhancing the quality of the environment for its members and all citizens. The plaintiff association brought suit in this District Court against the United States and the Interstate Commerce Commission, seeking a preliminary injunction to restrain enforcement of a general railroad freight increase that would have applied to both recyclable and non-recyclable materials. The thrust of the complaint was that the rate increase was illegal because the defendants did not prepare a detailed environmental impact statement. SCRAP's allegation of "in-

jury in fact" was that the adverse environmental impact meant that:

. . . each of its members was caused to pay more for finished products, that each of its members 'uses the forests, rivers, streams, mountains, and other natural resources surrounding the Washington Metropolitan area and at his legal residence, for camping, hiking, fishing, sightseeing, and other recreational [and] aesthetic purposes,' and that these uses have been adversely affected by the increased freight rates, that each of its members breathes the air within the Washington Metropolitan Area and the area of his legal residence and that this air has suffered increased pollution caused by the modified rate structure, and that each member has been forced to pay increased taxes because of the sums which must be expended to dispose of otherwise reusable waste materials.[27]

The defendants attacked SCRAP's standing in a motion to dismiss, and the Supreme Court found the plaintiff's contentions to be sufficient to withstand such a motion.

The Supreme Court's opinion is a four part inquiry into the issue and serves as a broadening precedent in the law of standing.

(1) The Supreme Court reaffirmed the position enunciated in *Sierra Club* that to have standing the party seeking review must be among those *actually injured:*

. . . for it is this requirement that gives a litigant a direct stake in the controversy and prevents the judicial process from becoming no more than a vehicle for the vindication of the value interests of concerned bystanders.[28]

---

24. Flast v. Cohen, 392 U.S. 83, 101, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968).

25. *See* Brennan. J. concurring and dissenting opinion in Barlow v. Collins; K. Davis, Administrative Law Treatise, § 22.00–3.

26. Constructores Civiles de Centroamerica, S.A. v. Hannah, 148 U.S.App.D.C. 159, 459

F.2d 1183 (1972) ; Ballerina Pen Co. v. Kunzig, 140 U.S.App.D.C. 98, 433 F.2d 1204 (1970) ; Scanwell Laboratories, Inc. v. Shaffer, 137 U.S.App.D.C. 371, 424 F.2d 859 (1970).

27. *SCRAP, supra,* at 678.

28. *SCRAP, supra,* at 687.

The actual injury claimed in *SCRAP* was that the " . . . allegedly illegal action of the Commission would directly harm them in their use of the natural resources of the Washington Metropolitan Area".[29]

(2) In *SCRAP*, the challenged agency action had national application and therefore its allegedly adverse impact would affect a wide range of citizens. However, the Court made it clear that standing cannot be denied simply because many people will suffer the same wrong.

To deny standing to persons who are in fact injured simply because many others are also injured, would mean that the most injurious and widespread Government actions could be questioned by nobody. We cannot accept that conclusion.[30]

(3) The Court next stated that an "attenuated line of causation" between the allegedly illegal conduct and the complained of injury does not preclude standing. In *SCRAP*, the line of causation was that increased use of non-recyclable goods meant a drain on the Washington area's natural resources and more refuse, all of which would affect the area's national parks, which plaintiffs use.

(4) The Court concluded its discussion of the causal link problem by saying that once a "specific and perceptible" harm has been established, standing will be granted even though the plaintiffs have only a small stake in the outcome of the litigation.[31]

Tax Analysts and Advocates derives its standing from its membership. Thus, as in *Sierra Club*, the Court must focus on the membership when applying the standing tests, i. e., some member or group of members must sustain the alleged injuries in order for the organization to maintain this action. In this case, plaintiff Field is named as a member and officer of Tax Analysts and Advocates. As a taxpaying citizen, voter and small contributor to election campaigns, Field alleges that Rev.Rul. 72–355 has the effect on him of substantially diminishing his ability to affect the electoral process and to persuade elected officials to adopt policies and programs he favors. Field further alleges that because Rev. Rul. 72–355 allows contributions (in excess of $3,000) to the political campaigns of a single candidate to escape the gift tax, the influence of the large contributor is increased while that of the small contributor is correspondingly reduced.

Although a citizen who is not wealthy may have little influence on the political process, the Courts have for many years recognized the citizen's right to judicial intervention to vindicate the power of his vote.[32] In Common Cause et al. v. Democratic National Committee et al., 333 F.Supp. 803 (D.D.C.1971) an action was brought by voters and contributors to force compliance with laws on permissible amounts of political contributions and campaign expenses. Plaintiffs alleged that if the candidates they supported complied with the laws while others did not, their efforts and their votes would be diluted or nullified. In granting standing, the Court quoted Baker v. Carr, 369 U.S. 186, 208, 82 S.Ct. 691, 705, 7 L.Ed.2d 663 (1962):

[The plaintiffs] are asserting 'a plain, direct and adequate interest in maintaining the effectiveness of their votes,' . . . not merely a claim of 'the right, possessed by every citizen "to require that the government

---

29. *SCRAP, supra,* at 687.

30. *SCRAP, supra,* at 688.

31. The Court, in a footnote, cited many examples of important interests that were litigated by those with only a very minor interest in the outcome. *See, e. g.,* Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) (fraction of a vote) ; McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961) (five dollar fine and costs) ; Harper v. Virginia Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed. 2d 169 (1966) ($1.50 poll tax).

32. Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

be administered according to law . . . ".'

The Court thus concludes that:

(1) Plaintiff Field's alleged diminution of his vote and the dilution of his ability to affect the electoral process are judicially recognized wrongs and are thus sufficient allegations of actual injury.

(2) Although millions of other American voters and taxpayers are similarly injured, this fact does not preclude standing.

(3) The causal link between the promulgation of Rev.Rul. 72–355 and the alleged injury may be somewhat strained but the Court finds it to be more persuasive than that which was upheld in *SCRAP, supra.*

(4) Finally, plaintiff Field's allegations establish a "specific and perceptible harm" which gives him a sufficient stake in the outcome of this litigation to ensure that he will pursue this case with the kind of vigor that the Article III "case or controversy" standard requires. Accordingly, defendants' motion to dismiss is denied.

## CROSS–MOTIONS FOR SUMMARY JUDGMENT

After careful consideration of the many points raised by both parties in their cross-motions for summary judgment, the Court has concluded that Helvering v. Hutchings, 312 U.S. 393, 61 S. Ct. 653, 85 L.Ed. 909 (1941), is the key to the resolution of this case.

The question presented here is whether Rev. Rul. 72–355 is a lawful interpretation of § 2503(b) of the Internal Revenue Code. As previously stated, the Revenue Ruling provides that a campaign committee is the donee of contributions and not the candidate for whom

the committee was established. *Hutchings* addresses itself to the issue of who is the donee of a gift for gift tax purposes. That case, if applicable, is controlling on the legality of this Revenue Ruling.

The applicability of *Hutchings* depends first, on whether the gift tax, § 2501, applies to contributions to political campaigns, and second, whether the holding in *Hutchings* is broad enough to cover this situation. Since the enactment of the federal gift tax in 1932, the position of the IRS has been that contributions to a political campaign are transfers to which the gift tax generally applies.[33]

■ It is thus clear to the Court that political contributions *are* subject to the gift tax.

■ In *Hutchings*, the taxpayer established a trust fund for the benefit of her seven children to which she transferred $145,000. In her gift tax return for 1935, the taxpayer excluded $5,000 for each child (exclusion is now $3,000) for a total of $35,000. The Commissioner allowed only a single deduction contending that:

. . . the trustee or the trust is the donee and as there was only a single trust there can be only a single statutory deduction from the total amount of the gifts.[34]

Since the statute allows only one deduction for each gift made to any "person" by the donor, the question facing the Supreme Court was whether the trust itself or the beneficiary of the trust is the "person" to whom the gift was made and for which the deduction is allowed.

The Court first stated that other statutory definitions of "person" were ambiguous and thus the Court had to look to the legislative history of the gift tax

33. *See* the second paragraph of Rev.Rul. 72–355, *supra;* Policy Statement issued by Commissioner of Internal Revenue Donald C. Alexander on December 11, 1973, which states that the only political contributions to which the IRS will not apply the gift tax provisions are those "arising in the Fifth

Circuit which are identical to [contributions made in] United States v. Edith R. Stern, [Stern v. United States], 436 F.2d 1327 (5th Cir. 1971)." IRS News Release, 1R–1341, reported unofficially at CCH Fed.Est. & Gift Tax Rep., para. 8189.

34. *Hutchings, supra,* at 395.

to determine how to ascertain the donee. The legislative history indicates that Congress was using the words in the gift tax in their ordinary and natural sense, and ". . . spoke of the beneficiary of a gift upon trust as the person to whom the gift is made."[35]

In discussing the scope of its decision, the Court felt that a "broadly applicable" exclusion which covers *all* gifts and *all* donees, and absent some statutory intent to differentiate between gifts made directly to donees and those made indirectly through a trust fund, there are no grounds to assume an attempt to favor any particular class of donees. In fact, the Court foresaw the very situation at hand in stating that

> . . . such an assumption would open the way to avoid the $5,000 limitation upon the allowed exemption, by resort to the simple expedient of the creation by a single donor of any number of trusts of $5,000 each for the benefit of a single beneficiary.[36]

The Court thus finds Hutchings to be broad enough in scope to cover gifts to political campaigns, and absent some overriding objection to its applicability, necessitates an award of summary judgment to the plaintiffs.

Defendants' first objection to applying the *Hutchings* "benefit" theory to this case is that it is neither the intention of the donor nor of the candidate that the funds be available for the personal use or benefit of the candidate.[37] Defendants state that there are many reasons for contributions to political campaigns but an intent to personally benefit the candidate, which is necessary for the *Hutchings* benefit theory to apply, is seldom ever the donor's motivation.

■ Application of the gift tax is a matter of objective analysis rather than subjective analysis of factors such as donative intent or purpose.[38] What is crucial is the practical effect of a given transaction. In the context of applying the gift tax to political contributions, regardless of what motivates the contribution, a benefit inures to the candidate. The defendants, however, argue that since the candidate does not have unrestricted use of the funds, he has not received any *legal* benefit. It seems abundantly clear to the Court that win or lose, a candidate's *personal* career is enhanced by his candidacy, and since his candidacy is financed by contributions, *a fortiori*, a contribution creates a legal benefit.

This point is illustrated by analogy to a gift in trust established to finance an individual's education. In both cases, benefits for a specific limited purpose accrue directly to an identifiable person. The "benefit" principle established in *Hutchings* applies in the campaign contribution case as well as in the educational trust case.

■ Defendants claim that Rev.Rul. 72–355 merely reaffirms a long-standing interpretation of the Internal Revenue Code which has been consistently adhered to by IRS. All the Court need say is that no administrative practice, no matter how long-standing, can override a clearly applicable decision by the Supreme Court.[39]

---

35. *Hutchings, supra,* at 396.

36. *Hutchings, supra,* at 397.

37. *Cf.* Stern v. United States, 436 F.2d 1327 (5th Cir. 1971).

38. Treas.Reg. 25.2511–1(g) clearly states, "The application of the [gift] tax is based on the objective facts rather than on the subjective motives of the donor." Commissioner v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960).

39. *See, e. g.,* United States v. Kaiser, 262 F.2d 367 (7th Cir. 1958); Trust of Bingham v. Commissioner, 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670 (1945).

This conclusion also applies to defendants' arguments concerning Treasury Reg. § 25.-2511–1(h)(1) adopted Nov. 14, 1958, in T.D. 6334.

Defendants next argue that defining a campaign committee as a person is a reasonable interpretation of the gift tax and one which § 7701(a)(1) of the Code and Treas.Reg. § 301.6701–1(a) [40] specifically include. As previously noted, the Supreme Court in *Hutchings* found the definition of person in § 1111(a)(1) (the predecessor to § 7701) to be ambiguous and of little aid in the gift tax area. The court stated:

> The definition is made generally applicable to all of the sections of the revenue act and was carried forward from earlier acts which contained no gift tax provisions.[41]

Further, the word "committee" as used in § 7701 refers to those appointed by the Court as guardians for one adjudged a lunatic. The Court finds this highly inappropriate to the *political campaign* committee issue.

Defendants have also cited what they feel will be numerous and complex problems in the administration of the *Hutchings* benefit theory to the political campaign contribution. The Court does not doubt that problems will arise, but this is no justification for the issuance of a revenue ruling which is clearly contrary to the mandates of the Supreme Court. This Court is also aware that the IRS has a long and distinguished background in establishing workable standards for the most complex of transactions; therefore, there is no reason to believe that the IRS cannot similarly regulate the political campaign finance area with its usual high level of dedication. Accordingly, plaintiffs' motion for summary judgment is granted.

---

40. Treas.Reg. Sec. 301–7701–1(a). "The term 'person' includes an individual, a corporation, a partnership, a trust or estate, a joint-stock company, an association, or a syndicate, group, pool, joint venture, or other unincorporated organization or group. Such term also includes a guardian, *committee*, trustee, executor, administrator, trustee in bankruptcy, receiver, assignee for the benefit of creditors, conservator, or any person acting in a fiduciary capacity."

41. *Hutchings, supra*, at 395.