Mary Ann HEYEN, Executrix of the Estate of Jennie Owen, Deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 88-1574-C.

United States District Court, D. Kansas.

Feb. 28, 1990.

John T. Suter, Hutchinson, Kan., for plaintiff.

Mary Dee Martoche, Office of Sp. Litigation, Tax Div., Dept. of Justice, Washington, D.C., and Robin Fowler, Asst. U.S. Atty., Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the plaintiff's motion for judgment notwithstanding the verdict (JNOV), or, in the alternative, for new trial. On February 2, 1990, the jury returned a verdict in favor of defendant on plaintiff's refund claim and on defendant's claim for fraudulent underpayment of gift taxes. Plaintiff contends the jury verdict must be set aside because jury instructions 16 and 17 were erroneous, the verdict is contrary to the evidence, and defendant's counsel made a prejudicial misstatement of the facts in closing argument. Defendant opposes plaintiff's motions.

On a motion for JNOV, the trial judge reviews all the evidence drawing all reasonable inferences in favor of the party opposing the motion. *Downie v. Abex Corp.*, 741 F.2d 1235, 1238 (10th Cir.1984). It is not the court's role to reweigh the evidence, assess the credibility of witnesses, or substitute its judgment for that of the jury. *Lucas v. Dover Corp., Norris Div.*, 857 F.2d 1397, 1400 (10th Cir.1988). A JNOV is cautiously and sparingly granted when the court is certain the evidence "conclusively favors one party such that reasonable men would not arrive at a contrary verdict." *Western Plains Service Corp. v. Ponderosa Development Corp.*, 769 F.2d 654, 656 (10th Cir.1985).

A motion for new trial is decided upon the trial court's exercise of informed and broad discretion. *Ryder v. City of Topeka*, 814 F.2d 1412, 1424 (10th Cir.1987). Courts do not lightly overturn jury verdicts in recognition of the sanctity attached to the verdict. *Mid–West Underground Storage, Inc. v. Porter*, 717 F.2d 493, 502 (10th Cir.1983). The motion should be granted when the court believes the verdict is against the weight of the evidence, prejudicial error has occurred, or substantial justice has not been done. *Holmes v. Wack*, 464 F.2d 86, 88–89 (10th Cir.1971). To be prejudicial, the court's rulings must be shown by the movant to have been erroneous and to have affected a substantial right of the movant. *Beacham v. Lee–Norse*, 714 F.2d 1010, 1014 (10th Cir.1983); *White v. Conoco, Inc.*, 710 F.2d 1442, 1443 (10th Cir.1983).

Relying primarily upon Treasury Regulation § 25.2511–1(g)(1), plaintiff confidently labels certain portions of jury instructions 16 and 17 as "blatant misstatements of law which do not apply to gift tax situations." (Dk. 31 at 14). In her present motion, as well as throughout the trial, plaintiff has contended the "regulations clearly say that the motive [of the donor] is

not to be considered" in gift tax situations. (Dk. 31 at 5). Plaintiff also offers as support of her position the case of *Commissioner v. Wemyss*, 324 U.S. 303, 65 S.Ct. 652, 89 L.Ed. 958 (1945). In *Wemyss*, the Supreme Court explained the intent of Congress to use the term "gifts" in its broadest meaning and to dispense with the common-law requirement of proving the elusive element of donative intent. 324 U.S. at 306, 65 S.Ct. at 654. The Supreme Court agreed with the Tax Court that the taxpayer's transfer of stock in consideration for her marriage was not an arm's length transaction made in the ordinary course of business. *Id.* at 307, 65 S.Ct. at 654. The Court also observed Congress' desire to recognize certain limited and well-defined exclusions to the gift tax:

> To reinforce the evident desire of Congress to hit all the protean arrangements which the wit of man can devise that are not business transactions within the meaning of ordinary speech, the Treasury Regulations make clear that no genuine business transaction comes within the purport of the gift tax by excluding "a sale, exchange, or other transfer of property made in the ordinary course of business (a transaction which is bona fide, at arm's length, and free from any *donative intent*)." Treasury Regulations 79 (1936 ed) Art 8.

324 U.S. at 306, 65 S.Ct. at 654 (emphasis supplied). This court firmly believes that the plaintiff misunderstands the regulation and the *Wemyss* decision, and that both of the authorities fully support the court's instructions.

Starting with the language of the regulation itself, it states, in pertinent part:

> Donative intent on the part of the transferor is not an essential element in the application of the gift tax to the transfer. The application of the tax is based on the objective facts of the transfer and the circumstances under which it is made, rather than on the subjective motives of the donor.

26 C.F.R. § 25.2511–1(g)(1). Contrary to plaintiff's argued interpretation, the regulation does not bar or preclude the consid-

eration of the transferor's donative intent. It merely allows for an application of the gift tax to a gratuitous transfer without specific proof of donative intent. In effect, the regulation presumes a donative intent for purposes of gift tax application whenever a property interest is voluntarily transferred in exchange for nothing or for something less than the adequate and full consideration of the property interest.

The reasonableness of this interpretation of the regulation is strengthened by looking to other regulatory language concerning one of the transactions excluded from the gift tax. As stated in § 25.2511–1(g)(1), the gift tax does not apply to "ordinary business transactions described in § 25.2512–8." This exception is defined and explained as "a sale, exchange or other transfer of property made in the ordinary course of business (a transaction which is bona fide, at arm's length, and free from any donative intent), will be considered as made for an adequate and full consideration in money or money's worth." 26 C.F.R. § 25.2512–8. Simply put, proof of any donative intent will defeat the gift tax exclusion for ordinary business transactions. It is clear that the regulations themselves do not forbid the consideration of donative intent, and, in fact, they expressly recognize it as a factor relevant when the objective circumstances of a transaction otherwise indicate a nontaxable transfer. *See Carson v. C.I.R.*, 641 F.2d 864, 866 (10th Cir.1981).

Congress imposed the gift tax to protect and supplement the estate tax and income tax. *Dickman v. Commissioner*, 465 U.S. 330, 338, 104 S.Ct. 1086, 1091, 79 L.Ed.2d 343 (1984). Before the *Wemyss* decision, courts had restricted the federal gift tax to transfers motivated by donative intent, an element of common-law gifts. Annotation, *Gift Tax*, 89 L.Ed. 679, 682 (1945). In furtherance of "the evident desire of Congress to hit [with the gift tax] all the protean arrangements which the wit of man can devise," the Supreme Court lifted the restriction of donative intent from the definition of a gift. *Wemyss*, 324 U.S. at 306–08, 65 S.Ct. at 654–55. As a result, the gift tax was not limited to transfers meet-

ing the definition of a common-law gift, but it was to encompass those transfers within the broader, objective definition of a gift. *See Fehrs v. United States,* 620 F.2d 255, 260, 223 Ct.Cl. 488 (1980).

Since the *Wemyss* decision, courts have still looked to donative intent, when evident, in determining whether a gift was made. In *Kincaid v. United States,* 682 F.2d 1220 (5th Cir.1982), the Government appealed a jury verdict that the taxpayer's transfer of her ranch to a closely held corporation in exchange for 34% of the voting stock of the corporation was a nontaxable exchange performed in the ordinary course of business. The taxpayer and her two sons formed the corporation to own and operate the ranch. The Fifth Circuit reversed the district court's denial of the Government's motion for JNOV concluding that "no businesswoman would have entered into this transaction." 682 F.2d at 1225. Confronted with an intra-family transfer, the Fifth Circuit resorted to the general rule that: "when, as here, the 'moving impulse for the . . . transaction was a desire to pass the family fortune on to others[,] [i]t is impossible to conceive of this as even approaching a transaction in the ordinary course of business.'" 682 F.2d at 1225 (quoting *Robinette v. Helvering,* 318 U.S. 184, 187–88, 63 S.Ct. 540, 542, 87 L.Ed. 700 (1943)). The Fifth Circuit was convinced the taxpayer only had a donative purpose for accepting less value in return for what she transferred. 682 F.2d at 1226.

In the decision of *Fehrs v. United States,* the Court of Claims affirmed and adopted the trial court's decision that the taxpayers' transfers of shares in return for annuities were a gift, and not a ordinary business transaction, to the extent of the disparity in value between the interests transferred and received. 620 F.2d at 259–60. The court recognized that the breadth of the gift definition "is plainly sufficient to encompass . . . those transfers which accord with the common law concept of gift." 620 F.2d at 260. As in *Kincaid,* an intra-family transfer was involved triggering a special scrutiny of the transaction. It was concluded:

A close look at the transaction is, therefore, unavoidable; the disparities in value that we ultimately come to, when taken together with the plaintiffs' full control over both ends of the transaction, are inconsistent with any form of property transfer save that of a gift. To put it another way, *since the visible aspects of the transaction do not negate the existence of donative intent,* there exists no ground upon which to conclude that the transaction was prompted solely by business considerations.

620 F.2d at 260 (emphasis supplied).

Finally, the court directs the plaintiff to the decision of *Diedrich v. Commissioner,* 457 U.S. 191, 102 S.Ct. 2414, 72 L.Ed.2d 777 (1982), which the court cited to the parties at the time of the jury instruction conference. The Supreme Court there held that the donor realizes taxable income when the donee pays the resulting gift taxes. The following critical language is found in that decision:

When a donor makes a gift to a donee, a "debt" to the United States for the amount of the gift tax is incurred by the donor. Those taxes are as much the legal obligation of the donor as the donor's income taxes. . . . Similarly, when a donee agrees to discharge an indebtedness in consideration of the gift, the person relieved of the tax liability realizes an economic benefit. . . .

An examination of the donor's intent does not change the character of this benefit. Although intent is relevant in determining whether a gift has been made, subjective intent has not characteristically been a factor in determining whether an individual has realized income.

*Id.* at 197, 102 S.Ct. at 2418 (footnote omitted). This statement on the relevance of donative intent appears to address the context of gift taxes. Furthermore, plaintiff has not come forward with any authority stating that the general principles governing gifts under federal income tax law are inapplicable to gift tax law.

The court believes instruction 16 fairly and plainly states the substance of the above regulations and authorities. Instruction 16 provides:

A taxable gift is the voluntary and gratuitous transfer of a property interest in exchange for nothing or for something less than the adequate and full value of the property interest. Though not necessary for its existence, a valid gift commonly features two characteristics or elements. First, intent on the part of the donor to make a gift. Second, the donor does everything reasonably permitted by the nature of the property and the circumstances of the transaction to part with ownership of the property.

For purposes of gift tax law, the general rule is that the subjective motive or donative intent of the transferor is not an essential element to a taxable gift. The law recognizes that the determination of whether a gift was actually made and completed can be based entirely upon the objective facts and circumstances of the transfer. However, any evidence of the donor's intent concerning the transfer may still be considered by you in making these determinations.

For the gift of property to be complete, the donor must relinquish dominion and control of it leaving himself or herself without any power to change its disposition. Generally, if a donor delivers a properly endorsed stock certificate to the donee or the donee's agent, the gift is completed for gift tax purposes on the date of delivery. Generally, if the donor delivers the certificate to his bank or broker as his agent, or to the issuing corporation or its transfer agent, for transfer into the name of the donee, the gift is completed on the date the stock is transferred on the books of the corporation.

You should always remember that it is the substance of the transaction, rather than its form, which should control your determination of a taxable gift.

Plaintiff's contrary construction of the Treasury Regulation and understanding of *Wemyss*, besides being inconsistent with the broad purpose of gift taxes, is entirely untenable and myopic.

■ Plaintiff also takes issue with the form over substance language contained in instructions 16 and 17. Plaintiff challenges the Government to cite a single gift tax case supporting the language found in instruction 17. This instruction reads:

The gift tax also applies to gifts indirectly made. Thus, any transaction in which a property interest is gratuitously passed to another, regardless of the means or device employed, constitutes a taxable gift. It is the substance, not the form, of the transaction which controls. Stated another way, what is critical in evaluating the nature of a transaction is its practical effect.

The first two sentences essentially quote 26 C.F.R. § 25.2511–1(c)(1). The remaining portion of instruction 17 is simply a restatement of long and well established federal tax law. "To permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress." *Commissioner v. Court Holding Co.*, 324 U.S. 331, 334, 65 S.Ct. 707, 708, 89 L.Ed. 981 (1945). As to plaintiff's challenge, the infrequent use of the substance over form doctrine in the area of gift taxes is explained in part by the fact that resorting to this specialized rule of objectivity is unnecessary because its purpose is achieved by the objective focus behind the definition of a gift. Yet, at least one court has stated in a gift tax case that "what is crucial is the practical effect of a given transaction." *See Tax Analysts and Advocates v. Shultz*, 376 F.Supp. 889, 900 (D.D.C.1974).

■ Ample evidence was presented for a reasonable jury to reach the same verdict that was rendered in this case. The testimony of several intermediate donees was that they never knew or actually believed that they owned the stock for some period of time. Both the manner and timing of the stock transfers, as well as the eventual recipients of those transfers, provide substantial evidence of Owen's intent to trans-

fer the stock to her heirs before her imminent death. The testimony of certain bank employees who had temporarily received some of Owen's stock demonstrates that Owen may have never parted with ownership and control of the stock during the first transfer. The jury could reasonably infer that because of Owen's intent similar circumstances surrounded the transfer of stock to the other intermediate donees. The evidence shows that, whether it was out of a friendship or a business relationship, the intermediate donees accepted the stock with the understanding that it was to be then transferred to Owen's intended beneficiaries. The jury was given an adequate factual basis to pierce the formalities of these nominal gifts and to attribute the substantive gifts to the heirs of Jennie Owen.

■ The fact that two of the nominal donees, Phyllis McClure and Brenda Eisenhour, did not indorse their stock certificates over to an Owen's family member establishes, in plaintiff's opinion, is cause for a JNOV or new trial. Despite the lack of signed certificates from McClure and Eisenhour, J.D. Hagar, the president of St. John National Bank at that time, cancelled the two certificates and issued the full number of shares to the Owen's family member. Consequently, the scheme was completed and dividends on all of the shares were paid to the Heyen family despite the lack of two signed certificates. The current president of St. John National Bank, Nolan Taton, sometime later discovered this situation and reissued stock certificates for Mary Ann Heyen in a smaller number, and for Brenda Eisenhour and Phyllis McClure in the original number of shares.

The court agrees that at least the benefit of the Eisenhour and McClure shares was enjoyed by the Heyen family as part of the Owen's gift for a short period of time. Other than to articulate the conclusion desired from the court, neither party briefed the issues for trial or for the post-trial motion of who was the owner of those shares during the period from the cancellation of the certificates by Hagar to their

reissuance to Eisenhour and McClure, and whether the Heyen family received those shares as part of the taxable gift. Based upon the United States' apparent concession that the effect of Eisenhour's and McClure's failure to sign the certificates in blank was that they retained the shares, (Dk. 32 at 6), the court finds that ownership rights to those shares never passed to members of the Heyen family. Consequently, those shares were not transferred to the Heyen family as part of the taxable gift. Nevertheless, the Government assessed gift taxes against the estate for the full value of those shares that were never received by the Heyens.

In the verdict form, the jury was not permitted to separate out the Eisenhour and McClure transactions from the other twenty-seven transfers. However, these two transfers, as a matter of law, should not have been submitted to the jury. As a result, the amount of gift taxes assessed by the United States is incorrect to the extent of the taxes imposed upon the value of the shares which were retained by Eisenhour and McClure. The court directs a remittitur in the amount of those taxes and accompanying interest and fraud penalty for that amount of taxes. The United States shall calculate the amount of the remittitur and submit it to the plaintiff for agreement on the calculations. Plaintiff's agreement on the calculations will not constitute a waiver of any issue regarding the valuation of the stock or any other issue except for the mechanics of these calculations. If an agreement is reached, a final order of judgment shall be prepared by the United States reflecting the agreed remittitur. If no agreement on the calculations can be reached, the parties should submit in writing their respective positions to the court for decision.

■ The court has considered each of the plaintiff's other arguments regarding the sufficiency of the evidence to sustain the jury's verdict and finds them to be without merit. In particular, the attorney for the United States did not make a prejudicial misstatement when he offered the jury a reasonable inference to be drawn

from the testimony of James Adams. Adequate evidence was presented for the jury to find that Mary Ann Heyen fraudulently underreported a part of the tax due on the 1983 gift tax return and did not rely in good faith upon the advice of her attorney.

IT IS THEREFORE ORDERED that plaintiff's motion for JNOV, or in the alternative, for new trial is denied;

IT IS FURTHER ORDERED that the United States shall calculate a remittitur in the amount of those taxes which were imposed upon the shares retained by Eisenhour and McClure, and the accompanying interest and fraud penalties for that amount of tax. The United States shall submit in 20 days from the date of this order those calculations to the plaintiff for agreement. Plaintiff shall respond within 15 days of receipt of those calculations on whether she agrees with those sums. If an agreement is reached, the United States shall submit to the court a final order of judgment reflecting those agreed sums. If no agreement is reached, the parties shall present to the Court in writing their respective positions within 10 days thereafter.