## STATE OF OKLAHOMA *v.* STATE OF TEXAS.

## UNITED STATES, INTERVENER.

### IN EQUITY.

### No. 18, Original.

PARTIAL DECREE RELATING TO STATE BOUNDARY, ENTERED MARCH 12, 1923.

Decree declaring the general course of and rules for locating the boundary between Oklahoma and Texas on the south bank of Red River; the effects of past and future erosion, accretion and avulsion; the status and ownership of the area known as the Big Bend, and of certain islands; the rights of inhabitants of Texas to access to the stream; limiting the actual survey to be made to places designated or to be designated; appointing commissioners to run, locate and mark those portions of the boundary, and providing for vacancies and specifying the method of marking and report to be made; with other provisions as to the work of the commission, objections, approval and costs.

This cause having been heard and submitted upon certain questions, and the Court having considered the same and announced its conclusions in an opinion delivered January 15, 1923, [260 U. S. 606]

It is ordered, adjudged, and decreed:

1. The boundary between the States of Oklahoma and Texas, where it follows the course of the Red River from the 100th meridian of west longitude to the eastern boundary of the State of Oklahoma, is part of the international boundary established by the treaty of 1819 between the United States and Spain, and is on and along the south bank of that river as the same existed in 1821, when the treaty became effective, save as hereinafter stated.

2. Where intervening changes in that bank have occurred through the natural and gradual processes known as erosion and accretion the boundary has followed the change; but where the stream has left its former channel and made for itself a new one through adjacent upland by the process known as avulsion the boundary has not followed the change, but has remained on and along what was the south bank before the change occurred.

3. Where, since 1821, the river has cut a secondary or additional channel through adjacent upland on the south side in such a way that land theretofore on that side has become an island, the boundary is along that part of the south bank as theretofore existing which by the change became the northerly bank of the island; and where by accretion or erosion there have been subsequent changes in that bank the boundary has changed with them.

4. The rules stated in the last two paragraphs will be equally applicable to such changes as may occur in the future.

5. The south bank of the river is the water-washed and relatively permanent elevation or acclivity, commonly called a cut bank, along the southerly side of the river

which separates its bed from the adjacent upland, whether valley or hill, and usually serves to confine the waters within the bed and to preserve the course of the river.

6. The boundary between the two States is on and along that bank at the mean level attained by the waters of the river when they reach and wash the bank without overflowing it.

7. At exceptional places where there is no well defined cut bank, but only a gradual incline from the sand bed of the river to the upland, the boundary is a line over such incline conforming to the mean level of the waters when at other places in that vicinity they reach and wash the cut bank without overflowing it.

8. The area known as the Big Bend, which lies within a northerly bend of the river between a southerly extension of the east line of range thirteen west in Oklahoma and a southerly extension of the west line of range fourteen west in that State, has been since before 1821 fast upland on the southerly side of the river, is within the State of Texas and never was owned by the United States. The northerly border of that area is part of the south bank of the river on and along which the state boundary extends.

9. Burke Bet Island and Goat Island, both of which are in the vicinity of the Big Bend Area, are islands in the river, have been islands since before 1821, are within the State of Oklahoma, and are the property of the United States.

10. The island in front of the line between Hardeman and Wilbarger Counties, in the State of Texas, was part of the fast valley land on the south side of the river in 1821, and was severed from the land on that side by avulsion in 1902. The island is within the State of Texas and the state boundary is along its northerly bank.

11. The treaty of 1819 secures to the inhabitants of the State of Texas a right of reasonable access to the

waters of the river along the state boundary, such as will enable them to reach the waters at all stages and to use the same for beneficial purposes in common with the inhabitants of the State of Oklahoma and of other parts of the United States.

12. The two States and the United States having joined in a request that they be permitted to withdraw the prayer in their pleadings that the boundary for its full length along the river be run, located and marked upon the ground, and having also joined in a further request that the boundary be run, located and marked only at the places hereinafter named, the requests are granted, and Arthur D. Kidder and Arthur A. Stiles, both cadastral engineers, are designated as commissioners to run, locate and mark upon the ground the following portions of the boundary in accordance with this decree and the principles announced in the opinion delivered January 15, 1923:

(a) Along the Big Bend Area as hereinbefore defined;

(b) From the Big Bend Area westward to a southerly extension of the west line of range sixteen west in Oklahoma;

(c) Along all places where by avulsion since 1821 the river has come to occupy a new channel whereby fast upland theretofore on one side of the river has come to be on the other side,—the line in every such instance to be run, located and marked on and along what was the south bank before the change occurred; and

(d) Along any other places which either State or the United States may designate in a request in writing approved by a member of this court.

13. The mode of marking those portions of the boundary shall be by establishing in the vicinity thereof permanent monuments upon the fast upland on the southerly side of the river at suitable distances apart and carefully taking the distances and courses from such monuments to the boundary as the same exists at the time the work

is done. A description of the monuments and a statement of such distances and courses shall be included in the report of the commissioners.

14. Before they enter upon their work each commissioner shall take and subscribe an oath to perform his duties faithfully and impartially. They shall prosecute the work with all convenient dispatch, shall have authority to employ such assistants as may be needed therein, and shall include in their final report a statement of the work done and of the time employed and the expenses incurred in its performance.

15. The boundary along the Big Bend Area as hereinbefore defined shall be run, located, monumented and reported to the court before the commissioners take up other portions of the work. In running and locating that part of the boundary the commissioners shall ascertain the exact location of all oil wells which are within three hundred feet of the same and shall include a statement thereof in their report.

16. The work of the commissioners shall be subject in all its parts to the approval of the court. Copies of their reports shall be promptly delivered to the two States and the United States, and exceptions or objections thereto, if there be such, shall be presented to the court, or, if it be not in session, filed with the Clerk, within forty days after the report is made.

17. If for any reason there be a vacancy in the commission when the court is not in session the same may be filled by the designation of a new commissioner by the Chief Justice.

18. The cost of executing this decree, including the compensation of the commissioners, shall be borne in equal parts by the State of Oklahoma, the State of Texas and the United States.