## STATE OF OKLAHOMA *v.* STATE OF TEXAS.

## UNITED STATES, INTERVENER.

IN EQUITY.

No. 15, Original.

DECREE RELATING TO STATE BOUNDARY, ENTERED JUNE 9, 1924.

Decree: (1) reciting the report of the commissioners heretofore appointed showing that they have run, located and marked the boundary in question, along the Big Bend Area of Red River; (2) overruling protests and exceptions and confirming the report; (3) adjudging that the line delineated in the report and on maps accompanying it be established and declared to be the true boundary between Texas and Oklahoma along the part of Red River designated in the report subject to future changes by erosion and accretion; and (4) directing that copies of this decree and of the said maps be transmitted to the Chief Magistrates of the two States.

On consideration of the report of the commissioners, heretofore selected to run, locate and mark portions of the boundary between the States of Texas and Oklahoma along the south bank of the Red River, showing that they have run, located and marked the portion of such boundary along the Big Bend Area, such report being as follows:

" To the Chief Justice and the Associate Justices of the Supreme Court of the United States:

"As commissioners designated in the decree of March 12, 1923, in the above entitled cause, we have run, located and marked upon the ground the boundary between the

States of Texas and Oklahoma along the Red River in what is known as the Big Bend Area (Area 'A') in accordance with that decree and the principles announced in the opinion delivered January 15, 1923, and we have the honor to submit the following joint report respecting that part of our work, with field notes and maps.

" Paragraphs 5, 6 and 7 of the decree follow:

" ' 5. The south bank of the river is the water-washed and relatively permanent elevation or acclivity, commonly called a cut bank, along the southerly side of the river which separates its bed from the adjacent upland, whether valley or hill, and usually serves to confine the waters within the bed and to preserve the course of the river.

" ' 6. The boundary between the two States is on and along that bank at the mean level attained by the waters of the river when they reach and wash the bank without overflowing it.

" ' 7. At exceptional places where there is no well defined cut bank, but only a gradual incline from the sand bed of the river to the upland, the boundary is a line over such incline conforming to the mean level of the waters when at other places in that vicinity they reach and wash the cut bank without overflowing it.'

" The foregoing specifications applied in the light of the opinion, admit of, and require the exercise of practical judgment in determining the line intended; but certain fundamentals, such as the following, obviously must form the final basis for the exact location of the line.

" The boundary line is a gradient of the flowing water in the river. It is located midway between the lower level of the flowing water that just reaches the cut bank, and the higher level of it that just does not overtop the cut bank. The physical top of the cut bank being very uneven in profile, cannot be a datum for locating the boundary line; but a gradient along the bank must be

used for that purpose. The highest point on this gradient must not be higher than the lowest acceptable point on the bank in that vicinity. The boundary line has been determined accordingly.

"We have marked the boundary line by wooden posts called 'witness posts' set along the bank at varying short distances from the boundary, and from each other. A bearing and distance has been taken from each witness post to one or more points on the boundary.

"Permanent reference monuments are located at varying intervals on the Texas bluff overlooking the river valley. Other permanent reference monuments are located on the Oklahoma bluff, and these overlook the river valley.

"By accurate surveys the witness posts are joined to each other and to the monuments on the Texas bluff. Similarly the Texas monuments are joined to each other and to the Oklahoma monuments, which in turn, are joined to each other and to the witness posts. Permanent bench marks located near the boundary are also joined to the witness posts and to the reference monuments.

"All oil wells within three hundred feet of the boundary have been accurately located upon the ground, and the position of each, whether in Texas or in Oklahoma, is stated. From each oil well, a bearing and distance is given to a point on the boundary.

"The boundary line is shown by the usual symbol and appropriate wording on the accompanying maps, which also show the positions of the witness posts, the oil wells, the reference monuments, the bench marks and other information usually appearing on such maps. These maps are made part of this report and are identified as follows:

"Map No. 1: Cadastral Map of the Big Bend Area, scale 2,000 feet to the inch;

" Map No. 2: Cadastral Map of the oil field region, in two sheets, Nos. 1 and 2, scale 500 feet to the inch; and,

" Map No. 3: Topographic Map of the Big Bend Area, in four sheets, Nos. 1, 2, 3 and 4, scale 500 feet to the inch, contour interval 2 feet.

" The survey was begun April 16, 1923, and completed February 17, 1924. The location of the boundary, reported herewith, is that position which existed on December 31, 1923.

" The surveying has been done with painstaking care in accordance with approved modern methods. The results have been subjected to one or more tests to verify their accuracy. The field notes have been reduced to the minimum, consistent with the proper record of the boundary location.

" The geographic positions are on the standard datum of the United States Coast and Geodetic Survey; the datum of the elevations is mean sea level.

" The field notes of the boundary, location of oil wells, description of reference monuments and witness posts, and tables of azimuths, distances, geographic positions and sea level elevations, follow:

[The matter here referred to occupies many pages of technical description, and hence is omitted from this report.]

" On March 26, 1923, before entering upon our work, we appeared before C. Elmore Cropley, Notary Public of the District of Columbia, in the office of the Clerk of the Supreme Court of the United States, and subscribed to the following oath:

" ' I, (Arthur D. Kidder and Arthur A. Stiles, subscribed individually), having been appointed one of the Commissioners to run, locate and mark the state line between the States of Oklahoma and Texas in accordance with the Partial Decree Relating to State Boundary en-

tered March 12, 1923, and the opinion of this Court delivered January 15, 1923, do solemnly swear that I will faithfully and impartially perform the duties of the office upon which I am about to enter, to the best of my abilities, and that I will support the Constitution of the United States. So help me God.'

"A statement of the time employed and the expense incurred in the performance of the work will be the subject of a later report.

" Five copies each of the report and maps have been to-day sent by registered mail to the Attorney General of the United States, the Attorney General of Texas and the Attorney General of Oklahoma. We also have filed with the clerk of the court fifty copies of the report and maps for the use of such private interveners as may apply for them. Thirty additional copies of the report and maps have been filed with the clerk for such disposition as the court may direct.

" The originals of the three maps hereinbefore named are bound with the original report, and appear in the following order: Map No. 1, Map. No. 2, Sheets Nos. 1 and 2, and Map No. 3, Sheets Nos. 1, 2, 3 and 4.

" Respectfully submitted.

"ARTHUR D. KIDDER,
"ARTHUR A. STILES,
*"Commissioners.*

" WASHINGTON, D. C., April 25, 1924."

And on consideration of the exceptions presented to such report and of the protests made against the same:

It is now adjudged, ordered and decreed that the exceptions and protests be overruled and that the report be in all respects confirmed.

It is further adjudged, ordered and decreed that the line delineated and set forth in the report and on the maps accompanying the same and referred to therein be

established and declared to be the true boundary between the States of Texas and Oklahoma along the part of the Red River designated in such report, subject however to such changes as may hereafter be wrought by the natural and gradual processes known as erosion and accretion as specified in the second, third and fourth paragraphs of the decree rendered herein March 12, 1923, 261 U. S. 340.

It is further ordered that the Clerk of this Court do transmit to the Chief Magistrates of the States of Texas and Oklahoma copies of this decree, duly authenticated under the seal of this Court, together with copies of the maps which accompanied the report of the commissioners.