Edward J. SIMONS et al., Appellants,

v.

Jerry VINSON and A. P. Clark et al., Appellees.

No. 24824.

United States Court of Appeals Fifth Circuit.

May 3, 1968.

As Corrected on Denial of Rehearing June 17, 1968.

Donald E. Short, R. M. Helton, Frank Gibson, Wichita Falls, Tex., for appellants.

Clyde O. Martz, Asst. Atty. Gen., Roger P. Marquis, William M. Cohen, J. Edward Williams, Attys. Dept. of Justice, Washington, D. C., Melvin M. Diggs, U. S. Atty., Fort Worth, Tex., Claude D. Brown, Asst. U. S. Atty., Fort Worth, Tex., Raymond N. Zagone, Attorney, Department of Justice, Washington, D. C., for Federal appellees.

Russell Larry Robinson, Wichita Falls, Tex., for Bell Oil & Gas Co.

Wallace N. Masters, Fillmore, Robinson, Lambert & Farabee, Sanders, Masters & Watson, Robert K. Pace, Wichita Falls, Tex., for appellees Vinson and Clark.

Before COLEMAN, AINSWORTH and DYER, Circuit Judges.

AINSWORTH, Circuit Judge:

Plaintiffs appeal from the dismissal of their complaint for lack of jurisdiction. The District Court found specifically:

"(1) The named defendants, Bureau of Land Management, Bureau of Indian Affairs and Department of the Interior are not legal entities or juridical persons which are capable of being sued.

"(2) The cause of action as to all named defendants is in essence a suit to quiet title to and obtain possession of land held and administered as public land by the United States and, hence, is a suit against the United States.

"(3) The United States is an indispensable party to this action, has not consented to be sued, and the suit must be dismissed as to all parties."

We agree with the District Court and affirm.

Appellants, Texas riparian landowners, filed this complaint against (1) United States Department of Interior and its Bureau of Land Management and Bureau of Indian Affairs (referred to herein as Lessors); [1] (2) various named lessees of these Lessors (referred to herein as Lessees); and (3) Bell Oil and Gas Company, a pipeline company and purchaser of oil from Lessees (referred to herein as Oil Purchaser).

The complaint asserted ownership to certain alleged accreted land, approximately 999.95 acres in area, adjacent to and south of the Red River (which river forms the interstate boundary line between Texas and Oklahoma) on which Lessors have granted various leases to Lessees, and from which Lessees have sold oil to Oil Purchaser. Plaintiffs prayed for an injunction against all defendants from interfering with their alleged title to the disputed land, a quitclaim to the land from Lessors, damages and an accounting from Oil Purchaser, and damages from Lessees as well as termination of Lessees' claim, title and possession of oil and gas rights.

Appellants and the United States are adjoining landowners—appellants to the south and the United States to the north. The Oklahoma-Texas boundary line has been determined by the United States Supreme Court to be the south bank of the Red River subject to changes wrought

---

[1]. The District Court denied appellants' motion for leave to file an amended complaint, filed subsequent to dismissal of the suit, by which an attempt was made to name the individual heads of these agencies, and an alternative remedy of mandamus was sought against Lessors to compel them to assist in "boundary location and recognition thereof, present and future, in accordance with the decrees of the U. S. Supreme Court." In denying the motion, the District Court noted that there were "no allegations which would alter the result" of the prior judgment.

by erosion and accretion.[2] Appellants contend that they and the United States are possessed of shifting ownership to the land by virtue of their common boundary line being a shifting boundary, and that the disputed land is at present owned by appellants.

Appellants do not dispute that the United States owns the south half of the Red River channel and the Oklahoma land that borders the boundary on the north; that the river channel itself is in the State of Oklahoma; that parts of the north half of the channel are owned by Indian wards and held by the United States as Trustee of the Heirs of Ray Doyah; and that as of December 31, 1923, as a result of the United States Supreme Court decisions in State of Oklahoma v. State of Texas,[3] title and possession of the disputed land was vested in the United States. Appellants do contend, however, that certain accretion to the south bank of Red River which occurred subsequent to the State of Oklahoma v. State of Texas decisions is, and has been since 1950, out of and south of the river channel, thus becoming a part of the State of Texas. It is this accretion to the south bank of the river which is the disputed area and which appellants claim.

Following the Supreme Court decisions in State of Oklahoma v. State of Texas, supra, Congress authorized the Secretary of Interior to make oil leases on "lands and oil and gas deposits belonging to the United States and situated south of the medial line of the main channel of Red River, Oklahoma" (30 U.S.C. §§ 230–236), on "public lands in that part of the Red River between the medial line and the south bank of the river, in Oklahoma" (43 U.S.C. § 209) and on Indian land (25 U.S.C. § 396). Pursuant to this legislation various oil and gas leases, which are the subject of this suit, were executed and renewed between 1925 and 1956. Lessees are in possession of the disputed land, which is producing oil, and the royalty from the leases is being paid to the United States.

Appellants' claim to the area is based on the Supreme Court decisions in State of Oklahoma v. State of Texas,[4] and on language in the leases that the "area of the lease may be diminished by reason of a shift to northward of the Texas-Oklahoma Line, due to erosion or accretion and that in case of such shift to the southward, the area of this lease will not be enlarged," and that the area of the leased land is "subject to variation arising from changes in the position of the medial line and of the South bank of the said Red River since December 31, 1923." Appellants contend that the parties to the leases are prevented by the language of the leases and the Supreme Court boundary decrees from claiming sovereign rights to Texas land.

Probably no principle of law is better established than that the United

---

2. State of Oklahoma v. State of Texas, 256 U.S. 602, 41 S.Ct. 621, 622, 65 L.Ed. 1115 (1920); 259 U.S. 565, 42 S.Ct. 594, 66 L.Ed. 1067 (1922); 260 U.S. 606, 43 S.Ct. 221, 67 L.Ed. 428 (1923); 261 U.S. 340, 43 S.Ct. 376, 67 L.Ed. 687 (1923); 261 U.S. 345, 43 S.Ct. 376, 377, 67 L.Ed. 689 (1923); 265 U.S. 493, 44 S. Ct. 571 (1924); 265 U.S. 500, 44 S.Ct. 573 (1924).

3. Note 2, supra.

4. Note 2, supra. The Partial Decree in State of Oklahoma v. State of Texas, 261 U.S. 340, 341, 43 S.Ct. 376, 67 L. Ed. 687 (1923), provides in pertinent part:

"It is ordered, adjudged and decreed:

"1. The boundary between the states of Oklahoma and Texas, * * * is part of the international boundary established by the treaty of 1819 between the United States and Spain, and is on and along the south bank of that river [Red River] as the same existed in 1821, when the treaty became effective, save as hereinafter stated.

"2. Where intervening changes in that bank have occurred through the natural and gradual processes known as erosion and accretion the boundary has followed the change * * *.

* * * * * * *

"4. The rules stated in the last two paragraphs will be equally applicable to such changes as may occur in the future."

States may not be sued without its consent. Louisiana v. McAdoo, 234 U.S. 627, 34 S.Ct. 938, 58 S.Ct. 1506 (1914).[5] Appellants' proffered amendment to their complaint is an unsophisticated attempt to avoid the defense of governmental immunity by naming as defendants the officers of the particular government agencies and alleging that these officers acted beyond their authority. The immunity of the sovereign, however, extends to its agencies, the Department of the Interior and the Bureau of Land Management and Indian Affairs, and the officers of these agencies.[6] Generally, the relief sought nominally against an officer is against the sovereign if the decree would operate against the sovereign. State of Hawaii v. Gordon, 373 U.S. 57, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963).[7] And it is well settled that "When Congress authorizes one of its agencies to be sued *eo nomine,* it does so in explicit language, or impliedly because the agency is the offspring of such a suable entity." Blackmar v. Guerre, 342 U.S. 512, 515, 72 S.Ct. 410, 412, 96 L.Ed. 534 (1952). The fact that the United States was not named as a defendant does not determine whether it is actually a party to the suit, for it has long been the law that to make such a determination it is necessary to look to the effect of the judgment that may be rendered. State of Louisiana v. McAdoo, supra. For, as stated in Dugan v. Rank, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963):

"The general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' Land

v. Dollar, 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209 (1947), or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.' "

The only two exceptions to this general rule are: "(1) action by officers beyond their statutory powers and (2) even though within the scope of their authority, the powers themselves or the manner in which they are exercised are constitutionally void." Dugan v. Rank, 372 U.S. at 621, 622, 83 S.Ct. at 1007.[8]

The relief sought here would require a judgment which would be within the general rule of Dugan v. Rank. Appellants seek to obtain quitclaim deeds to the disputed land from Lessors, the federal appellees, and an injunction against these appellees "from interfering with plaintiffs' title and possession in the future." Thus the District Court was asked both to compel and to restrain actions of the government. The effect of any judgment granting such relief would of necessity operate against the government. Hence, the suit is unquestionably against the United States. The corollary is clear—the United States is an indispensable party to such an action. Inasmuch as it has not consented to be sued, the Court lacks jurisdiction to maintain the suit unless appellants can show that it is within one of the exceptions to the Dugan v. Rank general rule. Appellants must show either that the statutes are void under which Congress authorized the Secretary of Interior to lease the disputed land, or that the Secretary or his agents acted beyond the scope of their statutory authority. Appellants attempt to show that appellee

---

5. See also Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); Malone v. Bowdoin, 369 U.S. 643, 82 S. Ct. 980, 8 L.Ed.2d 168 (1962); Larson v. Domestic & Foreign Commerce Corporation, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949).

6. See Ward v. Humble Oil & Refining Co., 5 Cir., 1963, 321 F.2d 775; Chournos v. United States, 10 Cir., 1964, 335 F.2d 918. The Bureau of Land Management

and the Bureau of Indian Affairs are agencies of the Department of the Interior. See 43 U.S.C. § 1; 25 U.S.C. § 1, respectively.

7. In accord, authorities cited in Note 5, supra.

8. In accord, Malone v. Bowdoin, supra. The general rule and its two exceptions were recently reiterated by this Court in Gardner v. Harris, 5 Cir., 1968, 391 F.2d 885.

Lessors, by leasing oil and gas rights to the disputed land, have acted ultra vires their authority.[9] However, this circuitous argument is based on appellants' assumption that the land in question belongs to appellants and not to the United States. Appellants contend that a decision by the District Court on the merits would prove their ownership. Appellants in "bootstrap" fashion would have the Court assume the very fact they desire to prove. However, in order to so prove appellants must necessarily sue the United States. Our original principle that absent its consent the United States may not be sued forecloses such a suit. Dismissal, therefore, was proper.[10]

Affirmed.

COLEMAN, Circuit Judge (dissenting):

The Constitution, Amendment V, mandatorily commands that no person shall be deprived of property without due process of law.

Assuming the allegations of the complaint to be true, as we must do in passing on the validity of a dismissal for want of jurisdiction, I must respectfully dissent.

I agree that the United States cannot be sued to compel the execution of a quitclaim deed, but that does not reach the heart of this litigation nor is it indispensable to the vindication of rights asserted by these appellants. Baldly stated, I do not believe that the doctrine of sovereign immunity should be superior to or permitted to nullify a mandatory command of the Constitution. It is not entitled to that kind of judicial sanctity.

The ably and concisely written majority opinion accurately recites the history of the litigation. It freely concedes that the boundary in issue was determined by a treaty, which is the supreme Law of the Land. The Supreme Court, after extensive litigation, to which the government was a party, has adjudicated and decreed that this boundary follows accretion. Appellants say that this accretion has taken place.

The defendants, however, by the invocation of sovereign immunity on behalf of *one of the parties involved,* propose to keep land which is not theirs. They propose to do it without allowing appellants a day in court. Thus, in my opinion, the treaty, the Supreme Court decrees, and the Constitution itself are rendered impotent.

The constitutional command is higher than the doctrine of sovereign immunity. Indeed, at the very least it is, or should be, a positive waiver of the doctrine in such cases. Even in the absence of waiv-

9. Plaintiffs contend that they are entitled to two, admittedly inconsistent but allegedly correct, remedies: (1) at law, to which the United States *is not* an indispensable party and (2) in equity, to which the United States *is* an indispensable party but to which suit the United States has consented by common law. They characterize their suit as a boundary dispute to enforce the Boundary Treaty of 1819 between the United States and Spain and to enforce the Supreme Court decrees in United States v. State of Texas, 143 U.S. 621, 12 S.Ct. 488, 36 L.Ed. 285 (1892), final decree in 162 U.S. 1, 16 S.Ct. 725, 40 L.Ed. 867 (1896), and the various decisions in State of Oklahoma v. State of Texas (note 2, supra). Appellants contend that they are entitled to relief against Lessees in possession and against the officials of Lessors who support such possession. The argument that the United States is not an indispensable party is based on appellants' theory that the remedies claimed by them would require only the performance of ministerial duties as distinguished from sovereign duties; that defendants' breach of these duties (by ignoring the Boundary Treaty and the decrees) is ultra vires, and hence the suit is not in essence against the United States and consent is unnecessary. On the other hand, appellants argue that the United States has consented to be sued inasmuch as it had consented to enforcement of the boundary decrees by becoming plaintiff and intervenor, respectively, in United States v. State of Texas, supra, and State of Oklahoma v. State of Texas, supra.

10. This does not mean, however, that appellants may not assert any legal claim which they may have for money damages against the government, e. g. under the Tucker Act, 28 U.S.C. §. 1346(a) (2).

738

er, I would hold that the doctrine cannot be used to defeat Constitutional guaranties.

I would, therefore, further hold that the United States Courts are open for the purpose of allowing these appellants an opportunity to prove their ownership. If they cannot, that ends the matter. I would not permit either the government, or those private parties who seek to hide behind its skirts, to benefit from the application of the doctrine in frustration of the Constitution.

Nor do I have any sympathy for the argument that agents and officials of the United States cannot be sued in such a case. If such agents or officials are acting in violation of Constitutional guaranties they cannot be legally acting for a government which must support and maintain that Constitution.

The majority says appellants may have a right of action for damages under the Tucker Act. The Constitution commands that they shall have the property.

I respectfully dissent.