E.G. "Gene" TURNER and James
Burden, Appellant,

v.

Sidney R. MULLINS and Amaryllis
G. Mullins, Appellees.

No. 2–04–160–CV.

Court of Appeals of Texas,
Fort Worth.

March 31, 2005.

Rehearing Overruled April 28, 2005.

Law Offices of Steven M. Williams and Joe B. Steimel, Wichita Falls, for Appellant.

Gibson, Hotchkiss, Roach & Davenport, Matthew D. Anderson, and John D. Rosentreter, Wichita Falls, for Appellees.

PANEL F: HOLMAN, GARDNER, and McCOY, JJ.

## OPINION

BOB McCOY, Justice.

Island in the stream?

Is that where it belongs?

Is there water in between?

To whom does it belong?[1]

### I. Introduction

E.G. "Gene" Turner and James Burden ("Turner and Burden") appeal from the trial court's judgment establishing ownership of a tract of land (the "Disputed Land") in Sidney R. and Amaryllis G. Mullins (the "Mullinses"). In three issues, Turner and Burden complain that the trial court erred in finding and rendering judgment (1) that there exists no southern fork of the Red River in the vicinity of the Disputed Land, that the Disputed Land is not located in Cotton County, Oklahoma, and that the Disputed Land has accreted to the Mullinses' land in Wichita County, Texas; (2) that Turner and Burden did not acquire title to the Disputed Land by conveyance and Oklahoma's Simplification of Land Titles Statute; and (3) that Turner and Burden did not acquire title to the Disputed Land by adverse possession.[2] Because we hold that the Mullinses did not acquire all the Disputed Land by accretion

and that the trial court must consider Oklahoma law in determining ownership of at least a portion of the Disputed Land, we will reverse and remand.

## II. Factual and Procedural Background

■ This is an accretion case involving title to a tract of land located in or along the Red River between Burkburnett, Texas and Devol, Oklahoma. The Mullinses own a tract of land in Texas immediately south of the Disputed Land and claim title to the Disputed Land under the doctrine of accretion,[3] that is, they claim that the Disputed Land is now attached to the Texas mainland property they own and is therefore their property. Turner and Burden argue that the Disputed Land is an island in the bed of the Red River and claim ownership by virtue of deeds filed in Cotton County, Oklahoma and an Oklahoma statute governing the simplification of land titles. Alternatively, Turner and Burden claim title to the Disputed Land by adverse possession.

The Mullinses filed suit against Turner and Burden on September 25, 2000. The case was tried to the bench on October 14 and 15, 2003. On March 31, 2004 the trial court entered a Final Judgment declaring that (1) the Mullinses are the fee simple owners of the Disputed Land, and (2) Turner and Burden have no right, title, or interest in the Disputed Land. The trial court later issued Findings of Fact and Conclusions of Law in support of its judg-

---

1. This is not the same as the lyrics to *Islands in the Stream* written by Barry Gibb, Robin Gibb, and Maurice Gibb, released in 1983, and recorded by, among others, Kenny Rogers and Dolly Parton (RCA 1983).

2. We address Turner and Burden's issues in this order for ease of discussion.

3. Accretion is the process of increasing real estate by the gradual and imperceptible disposition by water of solid material, through the operation of natural causes so as to cause that to become dry land that was once before covered by water. *Brainard v. State,* 12 S.W.3d 6, 17 (Tex.1999).

ment.[4]

## III. Accretion of the Disputed Land

In their first issue, Turner and Burden contend that the trial court erred when it found (1) that there exists no southern fork of the Red River separating the Disputed Land from the Mullinses' property, (2) that the Disputed Land is not located in Oklahoma, and (3) that the Disputed Land accreted to the Mullinses' land.[5] Turner and Burden argue that a southern fork of the Red River separates the Disputed Land from the mainland, so the Disputed Land is an island in the bed of the Red River. Further, Turner and Burden assert that the boundary between Texas and Oklahoma lies along the south bank of this southern fork. Accordingly, Turner and Burden argue that because the Disputed Land is an island located north of this southern bank, the Disputed Land is in Oklahoma.

The Mullinses respond that there is sufficient evidence in the record to support the trial court's findings. Specifically, the Mullinses contend that the boundary between Texas and Oklahoma, for purposes of title to the land, is the gradient boundary[6] located along the south bank of the Red River, which here forms the northern boundary of the Disputed Land. Although the Mullinses acknowledge that a small portion of the Disputed Land was once an island in the bed of the Red River, they contend that the Red River has over time "deposited solid material, mud, sand, and

sediment along [its] southern bank" so that the Disputed Land is no longer an island but is attached to the Texas mainland. Therefore, the Mullinses assert that because the gradient boundary of the river now lies north of the Disputed Land, the Disputed Land is located in Texas. Accordingly, the Mullinses argue that they have acquired the Disputed Land by accretion.

### A. Standard of Review

■■■ Findings of fact entered in a case tried to the court have the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex.1991). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury's answer. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996); *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994).

Because the Mullinses bore the burden of proof at trial, we will address Turner and Burden's legal sufficiency complaint as a "no evidence" issue and their factual sufficiency complaint as an "insufficient evidence" issue. *See Gooch v. Am. Sling Co.,* 902 S.W.2d 181, 183–84 (Tex.App.-Fort Worth 1995, no writ) (applying "no evidence" standard when the party without the burden of proof challenges the legal sufficiency of the evidence and "insufficient evidence" standard when the party without

---

4. The trial court's Findings of Fact and Conclusions of Law challenged on appeal are included in the appendix to this opinion.

5. Turner and Burden's first issue challenges the trial court's findings of fact numbers 2, 4, 7, 10, 11, 12, 13, 14, 15, 16, and 25.

6. A gradient boundary is a boundary established by using the survey method created for, and approved by, the United States Supreme

Court in a series of cases styled *Oklahoma v. Texas. See* 265 U.S. 500, 504–05, 44 S.Ct. 573, 604, 68 L.Ed. 1121 (1924); 261 U.S. 340, 341–44, 43 S.Ct. 376, 376–77 (1923); 260 U.S. 606, 631–32, 43 S.Ct. 221, 224–25, 67 L.Ed. 428 (1923). For additional information on the gradient boundary, *see* Arthur A. Stiles & Graham B. Smedley, *The Gradient Boundary—The Line Between Texas and Oklahoma Along the Red River,* 30 Tex. L.Rev. 305 (1952).

the burden of proof challenges the factual sufficiency).

In determining a "no-evidence" issue, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex.2001); *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex.1996); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cazarez*, 937 S.W.2d at 450; *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex.1996). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex.2002).

An assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). We are required to consider all of the evidence in the case in making this determination. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex.), *cert. denied*, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998).

**B. Analysis**

*The Doctrine of Accretion*

Accretion is the process of increasing real estate by the gradual and imperceptible disposition by water of solid material through the operation of natural causes so as to cause that to become dry land that was once before covered by water. *Brainard*, 12 S.W.3d at 17. On the other hand,

erosion is the process of wearing away the land. *Id.* Generally, as with accretion, erosion occurs gradually and imperceptibly. *Id.* A riparian owner ordinarily gains title to land by accretion and loses title to land by erosion. *Id.*

■ Texas follows the general rule that when the location of the margin or bed of a body of water that constitutes the boundary of a tract of land is gradually and imperceptibly changed by accretion or erosion, the margin or bed of the body of water, as so changed, remains the boundary line of the tract, which is extended or restricted accordingly. *Id.*; see *Hancock v. Moore*, 135 Tex. 619, 146 S.W.2d 369, 370 (1941); *Manry v. Robison*, 122 Tex. 213, 56 S.W.2d 438, 443–44 (1932); *Tyler v. Gonzales*, 189 S.W.2d 519, 521–22 (Tex.Civ. App.-San Antonio 1945, writ ref'd w.o.m.); *Denny v. Cotton*, 3 Tex.Civ.App. 634, 22 S.W. 122, 124 (1893, writ ref'd).[7] Thus, a riparian owner acquires title to all additions or extensions to the land through accretion and loses title to portions of the land that are worn, washed away, or encroached upon by the water. *See Brainard*, 12 S.W.3d at 18. The rights of the riparian owner to additions to land by accretion are vested property rights. *Id.*

■ Title to an island arising in a river generally follows title to the bed of river in which it was formed. *See Maufrais v. State*, 142 Tex. 559, 180 S.W.2d 144, 150 (1944); *City of Victoria v. Schott*, 9 Tex.Civ.App. 332, 29 S.W. 681, 682 (1895, no writ). In navigable streams, the soil, and hence all islands formed upon it, belong to the sovereign. *Schott*, 29 S.W. at 682. In streams not navigable, the riparian proprietors own to the middle thread of the stream, unless, by necessary construction of their grants, their boundaries are

---

7. At trial and appeal, both parties addressed accretion under Texas law rather than Okla-homa law; thus, we will analyze this issue in accordance with Texas law.

restricted. *Id.* Upon formation, title to the island vests in the owner of the riverbed. *Schott,* 29 S.W. at 682; *see Maufrais,* 180 S.W.2d at 150.

Where ownership of the island and the mainland differ, and the island is later joined with the mainland through accretion, the owner of the mainland is not entitled to the island as an accretion because the island already existed as the property of another; it was not an imperceptible and gradual accretion to the mainland. *See Schott,* 29 S.W. at 682. It logically follows that where an island is later joined with the mainland through accretion, the owner of the island is entitled to accretions to the island, just as the owner of the mainland is entitled to accretions to the mainland. *See id.;* C.C. Marvel, Annotation, *Applicability of Rules of Accretion and Reliction so as to Confer Upon Owner of Island or Bar in Navigable Stream Title to Additions,* 54 A.L.R.2d 643 (2004) (stating in section 2, "It may be stated as a very general principle, when followed to its ultimate, logical conclusion, that the owner of an island is entitled to additions thereto, under the proper application of general principles of accretion and reliction, in the same manner as is the owner of riparian land on the mainland.").

In *Oklahoma v. Texas,* the U.S. Supreme Court held the boundary between the states of Oklahoma and Texas in this area to be along the southern bank of the Red River. 260 U.S. 606, 636, 43 S.Ct. 221, 226, 67 L.Ed. 428. To establish the boundary, the Court commissioned surveyors to run, locate, and mark the boundary upon the ground. *Id.* at 640, 43 S.Ct. at 228; *See Oklahoma v. Texas,* 261 U.S. 340, 341–44, 43 S.Ct. 376, 376–77. The Court later adopted the surveyors' findings establishing the gradient boundary as the border between the two states, subject to the changes brought by the gradual and natural processes known as erosion and accretion. *Oklahoma v. Texas,* 265 U.S. 500, 504–505, 44 S.Ct. 573, 604, 68 L.Ed. 1121.

In support of their assertion that they acquired the Disputed Land by accretion, the Mullinses introduced into evidence a survey prepared by Arthur Eugene Probst Jr., an engineer and registered public surveyor. Probst's survey, dated August 14, 2000, reflects, among other things, the location of the Disputed Land in relation to the Red River, the 1923 gradient boundary, and the gradient boundary as of the date of the survey. Probst testified that he conducted the survey at the request of Mr. Mullins. Probst's survey shows that the gradient boundary had moved from its 1923 location south of the Disputed Land to the northern boundary of the Disputed Land. Probst stated that the 1923 map (the Mullinses' exhibit forty-three) shows an island in the bed of the Red River approximately where the MKT railway is located. He testified that he believed that this former island comprised only a small part of the Disputed Land and that it had been connected to the south bank of the Red River by the accumulation of salt cedar, which catches a lot of material coming down the river. Turner and Burden, on the other hand, presented no survey of the Disputed Land, nor did they present any expert testimony to refute Probst's finding that the gradient boundary had moved north of the Disputed Land.

The Mullinses also introduced into evidence several aerial photographs of the Disputed Land and surrounding area taken in the spring of 2003. The Mullinses argue that these photographs show the Red River to be a wide body of water located north of the Disputed Land.

Finally, Mr. Mullins testified that he owns 211 acres directly south of the Disputed Land and that his property extends to the southern bank of the Red River. He testified that he has lived along the Red River all his life, that he has observed the river change over the years, and that he believes the Red River has moved north of the Disputed Land. Mr. Mullins also testified that he had no recollection of the Disputed Land ever being an island in the bed of the Red River, but he admitted that to get to the Disputed Land from his property one must cross a small stream that sometimes holds water. He testified that some people call the stream Wild Horse Creek.

Turner and Burden generally assert that the Disputed Land has long been known to be an island in the bed of the Red River. In support of their position, they point out that their deeds describe the Disputed Land as being an island in the bed of the Red River bisected by the MKT Railway Bridge. In addition, Turner and Burden introduced several photographs taken on April 26, 2002 depicting a flow of water coming down what they argue is the southern fork of the Red River just north of the 1923 boundary. Turner and Burden also point out that the photographs introduced into evidence by Mullins show a flow of water south of the Disputed Land. Finally, Turner and Burden introduced into evidence an aerial photograph exhibit, upon which Burden marked in red the location of the 1923 gradient boundary.[8] Turner and Burden assert that it is no coincidence that the 1923 boundary depicted on this exhibit so closely follows what they allege is a southern fork of the Red River.

In rebuttal, the Mullinses introduced evidence that the average rainfall for the area in the month that Turner and Burden's photographs were taken is 2.62 inches and that in the 24 hours preceding the date of Turner and Burden's photographs more than 2 inches of rain had fallen. Accordingly, they assert that Turner and Burden's photographs actually show runoff from a normal month's worth of rain in only 24 hours. Further, the Mullinses introduced photographs showing that the stream was dry on the date of trial.

After reviewing the evidence, we conclude that the evidence is both legally and factually sufficient to support the trial court's findings that there exists no southern fork of the Red River in the vicinity of the Disputed Land and that no part of the Disputed Land lies in Oklahoma. The Mullinses presented some evidence that the southern bank of the Red River, which constitutes the boundary between Texas and Oklahoma, lies north of the Disputed Land. Thus, we conclude there to be more than a scintilla of evidence supporting the trial court's findings. *See Cazarez,* 937 S.W.2d at 450; *Leitch,* 935 S.W.2d at 118. Further, although some evidence also suggests that there may exist a southern fork of the Red River separating the Disputed Land from the Mullinses property, we conclude that the evidence supporting the trial court's findings is not so weak or the evidence to the contrary so overwhelming that the trial court's findings should be set aside and a new trial ordered. *See Garza,* 395 S.W.2d at 823.

■ On the other hand, we conclude that the evidence is legally insufficient to support the trial court's finding that all of the Disputed Land accreted to the Mullinses' land. The record reflects that a portion of the Disputed Land was once an

---

8. Burden testified that he prepared his red line based upon the 1923 concrete survey markers he personally observed on the property.

island in the bed of the Red River. Therefore, title to the island vested upon its formation, and the owner of the island is entitled to accretions to the island, just as the Mullinses', as owners of the mainland, are entitled to accretions, to the mainland. Here, the Mullinses presented no evidence at trial to prove that they ever owned the former island before it joined the mainland. Accordingly, while the Mullinses are entitled to ownership of the portion of the Disputed Land that constitutes accretions to the mainland, they are not entitled to the portion of the Disputed Land that constitutes the former island or accretions to the former island because they have not proven title to the island and because they cannot acquire title to the former island by accretion.

Therefore, we sustain Turner and Burden's first issue to the extent it challenges the trial court's judgment that the Mullinses are the fee simple owners of all of the Disputed Land by virtue of accretion. We overrule the remainder of their first issue.

### IV. Title by Conveyance

Turner and Burden also contend that the trial court erred in finding and rendering judgment that they did not acquire title to the Disputed Land by Oklahoma conveyances and by virtue of an Oklahoma statute governing the simplification of land titles.[9]

#### A. Standards of Review

We review a trial court's actual or implied conclusions of law de novo as legal questions. *See, e.g., Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex. 1998), *cert. denied,* 526 U.S. 1144, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999) (applying de novo standard to question of subject matter jurisdiction); *Michel v. Rocket Eng'g*

*Corp.,* 45 S.W.3d 658, 667 (Tex.App.-Fort Worth 2001, no pet.) (holding "[w]e review all questions of law de novo.") A trial court's conclusion of law will not be reversed unless it is erroneous as a matter of law. *Arch Petroleum, Inc. v. Sharp,* 958 S.W.2d 475, 477 (Tex.App.-Austin 1997, no pet.). Conclusions of law are not erroneous and will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Copeland v. Alsobrook,* 3 S.W.3d 598, 604 (Tex. App.-San Antonio 1999, pet. denied).

As to findings of fact, because Turner and Burden bore the burden to prove that they acquired title by conveyance, we will address Turner and Burden's legal sufficiency complaint as a "matter of law" issue and their factual sufficiency complaint as an "against the great weight and preponderance" issue. *See Gooch,* 902 S.W.2d at 183–84.

#### 1. *"Matter of Law"*

If an appellant is attacking the legal sufficiency of an adverse answer to an issue on which he had the burden of proof, the appellant must overcome two hurdles. *Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 940 (Tex.1991). First, the record must be examined for evidence that supports the finding, while ignoring all evidence to the contrary. Second, if there is no evidence to support the finding, then the entire record must be examined to see if the contrary proposition is established as a matter of law. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex.2001); *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989). The issue should be sustained only if the contrary proposition is conclusively established. *Dow Chem. Co.,* 46 S.W.3d at 241–42.

---

**9.** Turner and Burden's third issue challenges the trial court's findings of fact numbers 2, 4, 10, 11, 14, 16, 17, 21, and 25 and conclusions of law numbers 1, 2, 3, and 5.

2. *"Against Great Weight and Preponderance"*

Similarly, if a party with the burden of proof makes a factual sufficiency challenge, he must show that the finding was against the "great weight and preponderance" of the evidence. *Pac. Employers Ins. Co. v. Dayton,* 958 S.W.2d 452, 455 (Tex.App.-Fort Worth 1997, pet. denied). In reviewing an issue asserting that a finding is "against the great weight and preponderance" of the evidence, we must consider and weigh all the evidence and set aside the finding only if the evidence is so weak or the finding is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Dow Chem. Co.,* 46 S.W.3d at 241; *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

**B. Analysis**

At trial, Turner and Burden introduced into evidence deeds dated January 13, 14, and 16, 1969 to Turner conveying the following described property:

> An island in the bed of Red River bisected by the MKT Railway Bridge between Burkburnett, Texas, and Devol, Oklahoma, and as a matter of record in the Agricultural Adjustment Administration of Cotton County, Oklahoma, this island is described as the Southwest One–Fourth (SW/4) of Section Five (5), Township Five (5) South, Range Thirteen (13) West, I.M. as well as all land adjoining and contiguous to the above described property which is under fence and claimed by [the grantor].

Turner and Burden assert that these deeds, along with Turner's subsequent deed to Burden, establish that Burden currently holds title to the Disputed Land under Oklahoma law. Further, Turner and Burden argue that the Red River Boundary Compact establishes these deeds as evidence of record title.[10]

We note that Turner and Burden's expert, Robert Rafuse, testified that he believed that Burden had acquired title to the Disputed Land by either "color of title since 1969 ... or by adverse possession" under Oklahoma law. Further, we note that Rafuse testified that under Oklahoma's Simplification of Land Titles Act,[11] the Mullinses were required to file notice of any claim they had to the Disputed Land within one year of the effective date of the Act, and it was his understanding that they failed to do so. On cross-examination, however, Rafuse acknowledged that his opinions were based on Oklahoma law and would apply only if the Disputed Land were in Oklahoma. Accordingly, the Mullinses argue that Turner and Burden's claims to the Disputed Land under Oklahoma law are irrelevant because the Dis-

---

**10.** The Red River Boundary Compact (the "Compact") provides, "It is the principal purpose of the party states in entering into this compact to establish an identifiable boundary between the states of Texas and Oklahoma along the Red River as of the effective date of this compact *without interfering with or otherwise affecting private property rights or title to* [*the*] *property.*" TEX. NAT. RES.CODE ANN. § 12.002 art. I(b) (Vernon 2001) (emphasis added). The Compact further provides that "[a]ll public records in either party state *concerning any lands the sovereignty over which is changed by this compact* are accepted as evidence of record title to such lands." *Id.* art. V(a) (emphasis added). Here, there has been no assertion that the sovereignty of the Disputed Land was changed by the Compact. Further, this dispute involves title to property, and the Compact specifically provides that it does not affect private property rights or title to property. *See id.* art. I(b). Accordingly, we conclude that the Compact has no effect on the dispute before us. *See id.* art I(b), V(a).

**11.** *See* OLKA. STAT. ANN. tit. 16, § 68 (2002).

puted Land lies in Texas, not Oklahoma.[12] In addition, we note that if any part of the Disputed Land represents accretions to the mainland, there is no evidence in the record of any conveyances purporting to give Turner or Burden interest in those accretions.

As previously discussed, the boundary between Texas and Oklahoma in this area lies along the southern bank of the Red River. The record reflects that as of 1923, the Texas–Oklahoma border was south of the island, and the island was located in Oklahoma. However, the record also reflects that as of August 14, 2000, the island was connected to the Texas mainland, the Texas–Oklahoma border was north of the former island, and the former island was located in Texas.

 In determining the ownership of property, we apply the law of the jurisdiction in which the land is located. *See Colden v. Alexander*, 141 Tex. 134, 171 S.W.2d 328, 335–36 (1943) (indicating that title to realty can be affected only by the law of the jurisdiction in which it is situated); *Toledo Soc. for Crippled Children v. Hickok*, 152 Tex. 578, 261 S.W.2d 692, 696 (1953) (indicating that the validity of an instrument conveying realty is determined by the laws of the jurisdiction in which it is located). Thus, in deciding who owns the Disputed Land today, we must apply Texas law.

 Texas law provides that "[t]itles to land in ceded or even conquered territory acquired from a former sovereignty when it had the right to grant them are of course valid, even as against the succeeding sovereignty." *See Kenedy Pasture Co. v. State*, 111 Tex. 200, 231 S.W. 683, 691 (1921); *see also Jones v. P.A.W.N. Enters.*, 988 S.W.2d 812, 821 (Tex.App.-Amarillo

1999, pet. denied). Thus, because at least a portion of the Disputed Land was once located validly in Oklahoma, Texas law requires that we look to Oklahoma law in determining whether Turner or Burden acquired title to any portion of the Disputed Land while it was located in Oklahoma.

Our review of the record indicates that the trial court did not consider Oklahoma law in evaluating Turner and Burden's claims of ownership by conveyance. Thus, because we have already determined, in evaluating Turner and Burden's first issue, that the trial court erred when it found that the Mullinses acquired title to all the Disputed Land by accretion, and because we now determine that the trial court erred by not evaluating the validity of Turner and Burden's claims of ownership by conveyance under Oklahoma law, we hold that the trial court's fact finding that Turner and Burden did not acquire title to any portion of the Disputed Land by virtue of conveyance to be against the great weight and preponderance of the evidence. Further, for these same reasons we also hold that the trial court erred as a matter of law in concluding the Mullinses to be the fee simple owners of all the Disputed Land and that Turner and Burden have no right, title, or interest in any portion of the Disputed Land. Accordingly, we sustain Turner and Burden's third issue challenging the trial court's judgment that Turner and Burden have no right, title, or interest in the Disputed Land.

### Title by Adverse Possession

Finally, Turner and Burden in their second issue contend that the trial court erred when it found that they had not acquired title to the Disputed Land by adverse pos-

---

12. There is no determination as to whether the island existed as such on the date of the

inception of the Act, triggering the one-year notice requirement.

session.[13] Specifically, Turner and Burden assert that they have pleaded and proven the affirmative defense of adverse possession under the three year, ten year, and twenty-five year provisions of the Texas Civil Practice and Remedies Code and under Oklahoma's adverse possession statute. In support of their contention, Turner and Burden presented expert testimony indicating that they had established title by adverse possession under both Texas and Oklahoma law.

## A. Standard of Review

Turner and Burden, as the parties seeking to establish title to land by adverse possession, had the burden to prove every fact essential to that claim by a preponderance of the evidence. *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex.1990) (op. on reh'g). Accordingly, we will address Turner and Burden's legal sufficiency complaint as a "matter of law" issue and their factual sufficiency complaint as an "against the great weight and preponderance" issue. *See Gooch*, 902 S.W.2d at 181, 183–84. Conclusions of law may not be challenged for factual sufficiency, but they may be reviewed to determine their correctness based upon the facts. *Rogers v. City of Fort Worth*, 89 S.W.3d 265, 277 (Tex.App.-Fort Worth 2002, no pet.).

Because the question of adverse possession normally is a question of fact, only in rare instances is a reviewing court justified in holding that adverse possession has been established as a matter of law. *See Bywaters v. Gannon*, 686 S.W.2d 593, 595 (Tex.1985). In order to establish adverse possession as a matter of law, the claimant must show by undisputed evidence that he adversely possessed the property continuously for the statutory period. *See id.* The claimant must submit undisputed and conclusive evidence of probative force on each essential element of adverse possession, and inferences are never indulged in his favor. *See id.; Dunn v. Taylor*, 102 Tex. 80, 113 S.W. 265, 267 (1908).

## B. Analysis

The three year, ten year, and twenty-five year Texas statutes under which Turner and Burden assert title by adverse possession all require that Turner and Burden prove, at a minimum, that they adversely possessed the Disputed Land for the relevant time period provided for in the statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.024, 16.026, 16.027, 16.028 (Vernon 2002).

Adverse possession is defined in section 16.021 of the civil practice and remedies code as "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." *Id.* § 16.021(1); *Rhodes*, 802 S.W.2d at 645. The possession must be actual, visible, continuous, notorious, distinct, hostile, and of such character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant. *Rhodes*, 802 S.W.2d at 645. Exclusive possession of the land is required to support an adverse possession claim; the adverse possession claimant must wholly exclude the owner of the property. *Terrill v. Tuckness*, 985 S.W.2d 97, 107 (Tex.App.-San Antonio 1998, no pet.); *Kleckner v. McClure*, 524 S.W.2d 608, 613 (Tex.Civ.App.-Fort Worth 1975, no writ). Joint or common possession by the adverse possession claimant and the owner defeats the requisite quality of ex-

---

**13.** Turner and Burden's second issue challenges the trial court's final judgment and its findings of fact numbers 4, 18, 19, 20, 21, 22, 23, 24, 25, and 27, and its conclusions of law numbers 1, 2, 3, 5, 6, and 7.

clusiveness. *West End API Ltd. v. Roth-pletz,* 732 S.W.2d 371, 375–76 (Tex.App.-Dallas 1987, writ ref. n.r.e.) (citing *Rick v. Grubbs,* 147 Tex. 267, 214 S.W.2d 925, 927 (1948)).

■ Here, the record reflects that both parties were using the Disputed Land. Although Turner and Burden produced evidence that they used the Disputed Land, so too did the Mullinses. Mr. Mullins testified that he was born on December 20, 1958 and that as far back as he could remember he and other family members had hunted, fished, and camped on the Disputed Land. He also testified that he and other members of his family visited the Disputed Land to go swimming. He testified that over the years he had gone on the Disputed Land approximately twenty times per year and that during that time he encountered Turner three or four times. He testified that Turner had never asked him to leave the Disputed Land and that he was unaware of Turner ever asking any member of the Mullins family to do so.

Several other members of the Mullins family also testified that they used the Disputed Land. Mrs. Mullins testified that she and Mr. Mullins's cousins would go swimming on the property on Sunday afternoons and that Mr. Mullins's cousins would hunt on the property. In addition, she testified that she and Mr. Mullins's cousins would see Turner while on the Disputed Land and that he never asked them to leave. Further, Tim Mullins, Mr. Mullins's cousin, testified that he first entered the Disputed Land around 1964 and that he has hunted, trapped, swum, and ridden motorcycles on the Disputed Land in the years since. He testified also that he had seen Turner while on the Disputed Land and that Turner had never asked him to leave. Finally, Monte Mullins, Mr. Mullins's brother, testified that he would walk, hunt, and swim on the Disputed Land and that Turner had never asked him to leave.

Turner and Burden contend that these entries came at a time when the Mullinses did not claim any interest in the Disputed Land. The Mullinses respond that Turner and Burden are attempting to shift the burden of proof regarding the elements of adverse possession. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.021. We agree. As previously stated, Turner and Burden bore the burden to prove every fact essential to their claim by a preponderance of the evidence. *See Rhodes,* 802 S.W.2d at 645. Accordingly, Turner and Burden had the burden to prove that the Mullinses entries came at a time when the Mullinses did not claim any interest in the Disputed Land. *See id.* This is something they did not do.

Turner and Burden also contend that these entries occurred with permission. In support of this contention, Turner and Burden assert that the Mullinses spoke with and obtained a key from Turner. However, we note that the key was to a gate located on Turner's adjacent property and not the Disputed Land. Further, witness Tim Mullins testified that he asked Turner for a key to the gate on Turner's land so that he could have better access to the Disputed Land, not because he believed that it was necessary to get Turner's permission to go on the Disputed Land.

Thus, after reviewing the record, we conclude that Turner and Burden did not prove as a matter of law that their possession of the Disputed Land was adverse or hostile to the claim of the Mullinses or that Turner and Burden wholly excluded the Mullinses from the Disputed Land for any of the requisite limitations periods. Further, we conclude that while Turner and Burden presented expert testimony indicating that they had obtained title by adverse possession, the adverse findings of

the trial court as to Turner and Burden's adverse possession of the Disputed Land were not against the great weight and preponderance of the evidence. We also conclude, for these same reasons, that Turner and Burden failed to establish that they obtained title to the Disputed Land by adverse possession under Oklahoma law. *See Francis v. Rogers,* 40 P.3d 481, 486 (Okla.2001) (stating that an adverse possession claimant must show that the possession was hostile, under a claim of right or color of title, actual, open, notorious, exclusive, and continuous for the full statutory period); *Rodgers v. Int'l Land Co.,* 111 Okla. 98, 238 P. 407, 408 (1924) (stating adverse possession must be shown by clear and positive proof).

Accordingly, we hold that the trial court did not err in finding that Turner and Burden had not acquired title to the Disputed Land by adverse possession under Texas or Oklahoma law. Turner and Burden's second point is overruled.

## V. Conclusion

In sum, we hold that the Mullinses did not acquire title to all the Disputed Land by accretion, that the trial court must consider Oklahoma law in determining ownership of at least a portion of the Disputed Land, and that Turner and Burden did not acquire title to the Disputed Land by adverse possession. Accordingly, we reverse the judgment of the trial court and remand the case to the trial court for (1) a determination, in accordance with this opinion, of whether under Oklahoma law either Turner and Burden or the Mullinses have any right, title, or interest in the former island, and (2) if it be determined that ownership of the former island does not lie with the Mullinses, then for a determination by the trial court of what portion of the Disputed Land, if any, represents accretions to the Mullinses' property and what portion, if

any, represents accretions to the former island.

## Appendix

The trial court's Findings of Fact and Conclusions of Law challenged on appeal are as follows:

### Findings of Fact

2. As referred to herein, the "Disputed Land" consists of all land located in the J.H. Hadden Survey A–90, Wichita County, Texas, north of the "1923 bank established by Supreme Court" as depicted in Exhibit # 1 to the gradient boundary of the south bank of the Red River. The Disputed Land is further depicted in Exhibit # 3 as the area which is shaded by vertical lines.

4. Plaintiffs or their predecessors in title have owned all of the J.H. Hadden Survey A–90, Wichita County, Texas, save and except certain parcels.

7. There are no "multiple channels," nor is there a "southern fork" of the Red River in the vicinity of the Disputed Land.

10. The Disputed Land is not Goat Island, nor is the Disputed Land an island in the bed of the Red River that is bisected by the MKT Railway Bridge.

11. The Disputed Land was once an island in the Red River, that was bisected by the MKT Railway Bridge, and which has since accreted to the J.H. Hadden Survey A–90 of Wichita County, Texas.

12. The Disputed Land is now bounded on the north by the gradient boundary of the south bank of the Red River and on the south by the "1923 bank established by Supreme Court" as depicted in Exhibits # 1 and # 3 and further described as the shaded area of Exhibit # 3.

13. As of August 14th, 2000, the location of the gradient boundary of the south bank of the Red River to the Disputed Land

was that boundary depicted on Exhibits # 1 & # 3 of the "South Bank Using Gradient Boundary."

14. The Disputed Land has accreted to the Plaintiff's land.

15. The Disputed Land is located in Wichita County, Texas.

16. No part of the Disputed Land is located in the State of Oklahoma.

17. Defendants did not acquire title to the Disputed Land by legal conveyance.

18. Defendants did not acquire title to the Disputed Land by adverse possession or by limitations.

19. Plaintiffs' suit is not barred by limitations.

20. Defendants have not continuously held the Disputed Land in peaceable and adverse possession for three, ten or twenty five years.

21. Defendants have never held the Disputed Land in good faith under duly recorded deeds.

22. Defendants' have not continuously used, possessed, enjoyed or cultivated the Disputed Land for three, ten, or twenty five years. Rather, Defendants' use of the land was only occasional and intermittent.

23. Defendants' occasional use of the land was neither open, nor notorious.

24. Defendants' occasional use of the land was neither adverse, nor hostile to Plaintiffs' possession.

25. The deeds under which Defendants claimed possession of the Disputed Land were not filed in the county where the Disputed Land was located (Wichita County, Texas).

26. Defendants did not actually or visibly appropriate the Disputed Land.

27. Defendants did not commence or continue their occasional use of the Disputed Land under a claim of right that was inconsistent with or hostile to the claims of the Plaintiffs or claims of Plaintiffs' predecessors.

*Conclusions of Law*

1. Plaintiffs are the fee simple owners of the land described in Exhibit # 2, which includes a portion of the Disputed Land.

2. Plaintiffs are the fee simple owners of the Disputed Land.

3. Defendants have no right, title or interest in the Disputed Land or in any other land described in Exhibit # 2.

5. Defendants did not acquire title to the Disputed Land by legal conveyance.

6. Defendants did not acquire title to the Disputed Land by adverse possession.

7. Plaintiffs' suit is not barred by limitations.